269 F.3d 133 (2nd Cir. 2001)
 JUSTIN ROBINSON, PLAINTIFF-APPELLANT,
v.
THE GOVERNMENT OF MALAYSIA, DEFENDANT-THIRD-PARTY-PLAINTIFF-APPELLEE,
WALSH FLOORS, INC., & GENERAL ASSURANCE COMPANY, THIRD-PARTY-DEFENDANT-CROSS-CLAIMANT-APPELLEES,
E.W. HOWELL CO., INC. THIRD-PARTY-PLAINTIFF-DEFENDANT-APPELLEE.
 Docket No. 00-7730
August Term, 2000
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: January 2, 2001
Decided: October 11, 2001
 
 Appeal from a judgment of the United States District Court for the Southern District of New York (Constance Baker Motley, Judge) dismissing the plaintiff's complaint for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act. We affirm on the ground that the plaintiff failed either to allege facts, or to meet his burden of coming forward with evidence, sufficient to deprive the defendant of immunity under the Foreign Sovereign Immunity Act's "non-discretionary torts" exception. We also hold that because of the absence of "manifest injustice," the plaintiff may not raise an alternative basis for jurisdiction under the Foreign Sovereign Immunities Act for the first time on appeal. Affirmed. Judge Sotomayor concurs in a separate opinion.[Copyrighted Material Omitted]
 Brian J. Issac, Pollack, Pollack, Issac & DeCicco (Michael B. Palillo, Michael B. Palillo, P.C., of counsel), New York, Ny, for Plaintiff-Appellant.
 Timothy J. Keane, Quirk & Bakalor, P.C. (Scott P. Taylor and Corrine R. Robinson, of counsel), New York, NY for Defendant-Appellee.
 Before: Sack, Sotomayor, and Katzmann, Circuit Judges.
 
 Sack, Circuit Judge
 
 1
 In November 1994, plaintiff Justin Robinson, an employee of John Shields Detective Agency ("Shields Agency"), was assigned as a security guard at a building on the East Side of Manhattan, in New York City. The building had then recently been purchased by the defendant, the Government of Malaysia. While on duty, Robinson was injured when he slipped and fell on a "white substance" apparently left on the floor by construction workers.
 
 
 2
 Invoking federal subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, Robinson filed a complaint against the Malaysian government in the United States District Court for the Southern District of New York alleging that it had "caused" his injuries "by [its] recklessness, carelessness and negligence... in the ownership, operation, maintenance and control of the [building]...." Pl.'s Compl. ¶ 11. In its amended answer, the Malaysian government asserted immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602- 1611, and concurrently moved to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The district court (Constance Baker Motley, Judge) granted the motion.
 
 
 3
 We affirm on the grounds that (i) Robinson failed either to allege facts, or to meet his burden of coming forward with evidence, sufficient to deprive the Malaysian government of immunity under the "non- discretionary torts" exception of the FSIA, 28 U.S.C. § 1605(a)(5); and (ii) Robinson may not, for the first time on appeal, raise the "commercial activities" exception to sovereign immunity, 28 U.S.C. § 1605(a)(2), as an alternative basis for jurisdiction, because he has failed to demonstrate that our refusal to hear that assertion in the first instance would work a "manifest injustice."
 
 BACKGROUND
 
 4
 With one exception, discussed below in footnote 1, the parties do not dispute the material facts insofar as they are relevant to this appeal. From July 1981 to November 1994, Robinson worked as a private security guard for Shields Agency. In 1984, the agency assigned Robinson to act as a guard at a building at 313 East 43rd Street, New York, New York (the "premises"), then occupied by a foreign-student organization, the American Field Service. Robinson continued to work at the premises until November 29, 1994, the date of the accident that is the subject of this litigation.
 
 
 5
 In 1993, the American Field Service vacated the premises. The Malaysian government purchased them on a date unspecified in the record but before the time of Robinson's accident. It had not yet occupied them when Robinson was hurt.[1] Although Robinson was himself uncertain who owned the premises at the time of the accident, he was under the impression that the Malaysian government did because "[f]rom time to time people [,]... representatives maybe from the Malaysian Government" would visit to "see what [was] happening."
 
 
 6
 The record suggests that the Malaysian government in effect inherited and retained the services of Shields Agency from the American Field Service. Robinson confirmed that he continued to work at the premises throughout the ownership transition, until the time of the accident. His duties included periodic security inspections of each floor of the building, registration of visitors, and maintenance of a logbook in which he recorded, inter alia, the results of his inspections and the arrival and departure of visitors.
 
 
 7
 To render the premises suitable for use as a mission to the United States,[2] the Malaysian government hired a general contractor, E.W. Howell Co., Inc. ("Howell"), to perform renovations. Howell, in turn, enlisted at least one subcontractor, Walsh Floors, Inc. & General Assurance Company ("Walsh"). Howell and Walsh are third party defendants in this action. Their claims are not before us on appeal, and the record on appeal provides scant information about their activities. The record strongly suggests, however, that both were independent contractors, and we assume that to be the case for the purposes of this opinion. One J. Walsh, presumably a principal of Walsh, testified that the Malaysian government never instructed Walsh employees in the means or methods by which they should work or furnished them with construction materials or equipment. The record does not show what control, if any, the Malaysian government exercised over the means or methods by which Howell performed its general contract. But the Malaysian government's brief on appeal states, Appellee's Br. at 1-2, and Robinson does not dispute, that Howell, too, was a "contractor."
 
 
 8
 On the morning of November 29, 1994,[3] Robinson slipped and fell at the premises, then still undergoing construction work. He cannot recall the accident and cannot say for certain what caused it. But he did testify that prior to the accident, construction workers were putting up drywall, preparing to lay carpet, and installing electrical wiring. Both parties ascribe Robinson's accident to a "white substance" on the floor, which they assume one of the contractors left there during construction. Robinson's accident injured him, he contends severely, and he asserts that he continues to suffer from "serious orthopedic and neurological conditions." Appellant's Br. at 3.
 
 
 9
 On November 12, 1997, Robinson brought suit against the Malaysian government by filing a verified complaint in the United States District Court for the Southern District of New York. He invoked federal jurisdiction under 28 U.S.C. §§ 1331 and 1343 and alleged that he "was caused to sustain severe and permanent injuries when, due to the negligence of the Defendant, he was caused to slip and fall due to a dangerous and defective condition." Pl.'s Compl. ¶ 10. He also alleged that his injuries were "caused by the recklessness, carelessness and negligence of the Defendant in the ownership, operation, maintenance and control of the premises...." Id. ¶ 11. Apart from these generic allegations of negligence, the complaint did not specify how the Malaysian government caused Robinson's injuries except insofar as it asserted that, as owner of the premises, the government "had a duty to maintain [them] in a reasonably safe condition...," id. ¶ 8, and owed and breached some non-delegable duty of care to "all persons lawfully [at its premises]," including Robinson, id.
 
 
 10
 The Malaysian government's answer, filed on September 10, 1998, denied the allegations generally. The defendant then filed a third-party complaint against Howell, which, in turn, filed a second third-party complaint against Walsh.
 
 
 11
 On April 20, 2000, the Malaysian government moved to amend its answer nunc pro tunc to assert sovereign immunity and to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Robinson failed timely to file opposition papers, and the district court granted the motion by default.
 
 
 12
 On May 15, however, the district court vacated its order so as to permit Robinson to respond to the Malaysian government's motion. Robinson then filed answering papers in which he argued that the "non-discretionary torts" exception to the FSIA deprives the Malaysian government of sovereign immunity under the allegations set forth in his complaint. The Malaysian government responded, inter alia, that even assuming the truth of these allegations, it retained immunity because its only acts - - purchasing a building and hiring contractors to renovate it for use as a foreign mission -- were discretionary; and that to defeat sovereign immunity under the "non-discretionary torts" exception, the plaintiff must, as Robinson did not, allege non-discretionary conduct.
 
 
 13
 On May 17, 2000, the district court again granted the Malaysian government's motion "on sovereign immunity grounds" and dismissed Robinson's complaint "for lack of subject matter jurisdiction." On May 26, 2000, judgment dismissing the complaint "for the reasons stated in the Court's Order dated May 17, 2000" was entered. This appeal followed.
 
 DISCUSSION
 I. Standard of Review
 
 14
 "The standard of review applicable to district court decisions regarding subject matter jurisdiction under the FSIA is clear error for factual findings and de novo for legal conclusions." U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 150-51 (2d Cir. 2001) (citing Filetech S.A. v. Fr. Telecom S.A., 157 F.3d 922, 930 (2d Cir. 1998)).
 
 
 15
 The district court's terse order makes it difficult to determine the precise grounds, legal or factual, on which it dismissed Robinson's complaint. We have held, however, that "[w]e review de novo a dismissal for lack of subject matter jurisdiction where the trial court dismissed on the basis of the complaint alone or the complaint supplemented by undisputed facts from the record." Mackensworth v. S.S. Am. Merchant, 28 F.3d 246, 252 (2d Cir. 1994). The summary nature of the court's order makes it difficult to determine whether the court resolved any factual disputes in its order dismissing this action. But we need not inquire into any potentially disputed issues of fact to resolve this appeal. Our review is therefore de novo.
 
 II. Jurisdiction under the FSIA
 
 16
 The district court's jurisdiction over this litigation, if jurisdiction it had, arose under 28 U.S.C. § 1330,[4] entitled "Actions against foreign states." Section 1330 provides in pertinent part:
 
 
 17
 The district courts shall have original jurisdiction without regard to amount in controversy of any non-jury civil action against a foreign state... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.
 
 
 18
 28 U.S.C. § 1330(a). Title 28 U.S.C. § § 1604 and 1605, the latter referred to in § 1330(a), are, like § 1330 itself, a part of the FSIA. Section 1604 provides that, generally, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in [28 U.S.C.] sections 1605 to 1607...." Section 1605 sets forth, inter alia, various exceptions to that immunity: the circumstances in which "[a] foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States." Id. § 1605(a). The FSIA "'provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country.'" Saudi Arabia v. Nelson, 507 U.S. 349, 355 (1993) (quoting Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 443 (1989)); see also Reiss v. Societe Centrale Du Groupe Des Assurances Nationales, 235 F.3d 738, 746 (2d Cir. 2000) (quoting Amerada Hess, 488 U.S. at 443).
 
 
 19
 Congress enacted the FSIA to "define the jurisdiction of the United States courts in suits against foreign states" and to codify "when and how parties can maintain a lawsuit against a foreign state...." H.R. Rep. No. 94-1487, at 1, 6 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6604. Congress intended the FSIA to "transfer the determination of sovereign immunity from the executive branch," id. at 7-8, 1976 U.S.C.C.A.N. at 6606, to which United States courts had theretofore traditionally deferred, see Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 486 (1983), "to the judicial branch" in order to conform the procedure in this country "to the practice in virtually every other country -- where sovereign immunity decisions are made exclusively by the courts and not by a foreign affairs agency." H.R. Rep. No. 94-1487, at 7-8, 1976 U.S.C.C.A.N. at 6606.
 
 
 20
 In Verlinden B.V., the Supreme Court held that the FSIA permissibly vests the federal courts with jurisdiction under the "arising under" clause of Article III of the United States Constitution.[5] See 461 U.S. at 497. For this reason, every suit against a foreign sovereign "necessarily raises questions of substantive law at the very outset," id. at 493, 103 S. Ct. 1962, namely, whether the court possesses federal subject-matter jurisdiction under one of the FSIA's exclusive statutory bases. See id. ("The statute must be applied by the District Courts in every action against a foreign sovereign, since subject matter jurisdiction depends on the existence of one of the specified exceptions to sovereign immunity....") (citation omitted); see also Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993) (quoting Verlinden B.V.). Under the FSIA, federal courts therefore inquire at the "threshold of every action" against a foreign state whether the exception to sovereign immunity that the plaintiff alleges permits the exercise of federal jurisdiction. Verlinden B.V., 461 U.S. at 493.
 
 
 21
 Before the district court, Robinson relied solely on the "non-discretionary torts" exception set forth in 28 U.S.C. § 1605(a)(5). That section reads in pertinent part:
 
 
 22
 (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case--
 
 
 23
 ....
 
 
 24
 (5)... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to--
 
 
 25
 (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused....
 
 
 26
 Id. Federal jurisdiction under this FSIA exception to immunity exists, then, only if (i) the plaintiff claims some injury "caused by the tortious act or omission" of a foreign state; and (ii) this act or omission was "non-discretionary."
 
 
 27
 We conclude that Robinson's claim fails in the first respect and therefore need not determine whether it succeeds in the second.
 
 III. Principles of Analysis
 
 28
 A. Issues of Fact in Rule 12(b)(1) Motions to Dismiss
 
 
 29
 In a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both. See Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000); see also Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 68 (1987) (Scalia, J., concurring in part and concurring in the judgment) ("It is well ingrained in the law that subject-matter jurisdiction can be called into question either by challenging the sufficiency of the allegation or by challenging the accuracy of the jurisdictional facts alleged." (citations omitted)). "[H]ow the district court proceeds to resolve the motion to dismiss depends upon whether the motion presents a factual challenge." Phoenix Consulting, 216 F.3d at 40. If "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," id., "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff," Sweet v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000) (citation omitted). But where evidence relevant to the jurisdictional question is before the court, "the district court... may refer to [that] evidence." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).
 
 B. Rule 12(b)(1) Motions in FSIA Cases
 
 30
 1. Generally. In the context of a Rule 12(b)(1) challenge to jurisdiction under the FSIA, then, we have said that the district court "must look at the substance of the allegations" to determine whether one of the exceptions to the FSIA's general exclusion of jurisdiction over foreign sovereigns applies. Cargill Int'l, 991 F.2d at 1019; see also Verlinden, B.V., 461 U.S. at 493-94. In doing so, the court "must review the pleadings and any evidence before it." Cargill Int'l, 991 F.2d at 1019.[6] In Filetech S.A., we held that the district court erred by failing to look beyond the pleadings to factual submissions, including affidavits, submitted to the court in order to resolve a factual dispute as to whether there was sufficient commercial activity to permit the court to exercise jurisdiction under the "commercial activities" exception to sovereign immunity. See 28 U.S.C. § 1605(a)(2). We remarked:
 
 
 31
 [I]n view of the... factual disputes [in the district court], it was error for [it] to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction. The district court "look[ed] only to the complaint" in making its determination. It did so despite the factual issues regarding jurisdiction that were presented to it. In these circumstances, the court should have looked outside the pleadings to the submissions, which both contradicted and supported the bare allegations of jurisdiction pleaded in the complaint.
 
 
 32
 Filetech S.A., 157 F.3d at 932; see also Phoenix Consulting, 216 F.3d at 40 ("When the defendant has... challenged the factual basis of the court's jurisdiction... the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.").
 
 
 33
 If the defendant challenges the factual basis of the plaintiff's claim,[7] "the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." Cargill Int'l, 991 F.2d at 1016 (internal citation omitted).[8] In other words, in assessing whether a plaintiff has sufficiently alleged or proffered evidence to support jurisdiction under the FSIA, a district court must review the allegations in the complaint, the undisputed facts, if any, placed before it by the parties, and -- if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue -- resolve disputed issues of fact, with the defendant foreign sovereign shouldering the burden of persuasion. See id.
 
 
 34
 The district court's review of the evidence before it on a motion to dismiss based on an assertion of sovereign immunity has particular significance because of the necessity of resolving that issue early on if possible. "[S]overeign immunity under the FSIA is immunity from suit, not just from liability." Moran v. Kingdom of Saudi Arabia, 27 F.3d 169, 172 (5th Cir. 1994) (citing Gould, Inc. v. Pechiney Ugine Kuhlmann, 853 F.2d 445, 451 (6th Cir. 1988)). Such "immunity... is effectively lost if a case is permitted to go to trial." Id. (citation omitted).
 
 
 35
 A district court does not, of course, decide a case on the merits in order to decide if it has jurisdiction. "[J]urisdiction is not defeated by the possibility that the averments might fail to state a cause of action." Bell v. Hood, 327 U.S. 678, 682 (1946). But under the FSIA, the district court may examine the defendant's activities to determine whether they confer subject matter jurisdiction on the federal courts. See Verlinden B.V., 461 U.S. at 489.
 
 
 36
 Inevitably, the jurisdiction and merits inquiries overlap to the extent that each requires examination of the applicable substantive law. But we do not think, as Judge Sotomayor suggests in her concurrence, that this makes these inquiries coterminous or "empt[ies] of meaning the concept of immunity from suit...." Post at 149 To the contrary, by permitting the district court to go beyond the bare allegations of the complaint, it preserves the effectiveness of the immunity doctrine by avoiding "put[ting the foreign government defendant] to the expense of defending what may be a protracted lawsuit without an opportunity to obtain an authoritative determination of its amenability to suit at the earliest possible opportunity." Segni v. Commercial Office of Spain, 816 F.2d 344, 347 (7th Cir. 1987).[9]
 
 
 37
 2. The "tortious act or omission" exception to sovereign immunity. Section 1605(a)(5) exempts foreign states from sovereign immunity in legal actions "in which money damages are sought against [it] for personal injury... caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment" provided that the claim is not "based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused." 28 U.S.C. § 1605(a)(5). In assessing whether there is a sufficient allegation or proffer of evidence to support[10] the conclusion that the Malaysian government committed a "tortious act or omission" in this case, the district court was required, first, to determine what the relevant activities of the Malaysian government were. Second, the court was required to decide whether those acts were tortious under the law of the State of New York, which indisputably would apply to the merits of the claim.[11] If those activities could not render the Malaysian government liable for a tort under New York law, then it remained immune under § 1605(a)(5). And if it remained immune under § 1605(a)(5), there was no jurisdiction over it under § 1330. Finally, if the district court concluded that the plaintiff did allege Malaysian government action that constituted tortious acts under New York law, the court would have been required to decide whether those acts were "non-discretionary." Otherwise, Malaysia's sovereign immunity under 28 U.S.C. § 1605(a)(5)(A) prevailed.
 
 
 38
 In making the assessment of whether the plaintiff has alleged actions on the part of the defendant that constitute a tort, the district court may well have taken an excursion into the same legal territory that it would visit in the course of deciding the case on the merits. That is not remarkable. The FSIA itself does not provide any substantive tort law to guide the inquiry. See First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba, 462 U.S. 611, 620 (1983) (noting that the FSIA was "'not intended to affect the substantive law of liability'") (quoting H.R. Rep. No. 94-1487, at 12). It is ordinary tort law that applies to non-immune foreign governments and into which the court's inquiry would properly have been directed. As noted in the legislative history of the FSIA, "'tortious act[s] or omission[s]'" for which the FSIA permits suit "include causes of actions which are based on strict liability as well as on negligence"; the "purpose of section 1605(a)(5) is to permit the victim of a traffic accident or other noncommercial tort to maintain an action against [a] foreign state to the extent otherwise provided by law." H.R. Rep. No. 94-1487, at 21, 1976 U.S.C.C.A.N. at 6620 (emphasis added).
 
 
 39
 Courts are therefore regularly called upon to inquire into substantive state or federal law to resolve the threshold question of subject matter jurisdiction under the FSIA. In Zappia Middle East Construction Co., Ltd. v. Abu Dhabi, 215 F.3d 247, 250-52 (2d Cir. 2000), for example, on appeal from the grant of a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, we held that the applicability of the "expropriation" exception to the FSIA, 28 U.S.C. § 1605(a)(3), required a determination whether the defendant's conduct violated "international law" and, in that case, whether principles of corporate law permitted the plaintiff to pierce the corporate veil of a foreign state-owned corporation. We did so even though the same question -- the liability under "international law" of the foreign government for the behavior of the corporation -- would have been presented on the merits. In First Fidelity Bank, N.A. v. Government of Antigua & Barbuda, 877 F.2d 189, 194 (2d Cir. 1989), on a motion to vacate a default judgment pursuant to Rule 60(b)(4) for lack of subject matter jurisdiction under the FSIA's "commercial activities" exception, we reviewed New York agency law to decide whether Antigua's ambassador could bind its government by his signature on loan papers. The plaintiff would have been required to meet the same standard and make the same factual showing in order to prevail on the merits with respect to the country's liability for the loan.[12] We held that the district court should have looked to the pleadings and factual submissions, including affidavits, to resolve a factual dispute as to whether the defendant engaged in sufficient commercial activity to permit jurisdiction. See id. at 195-96. We also specifically noted that a dismissal for lack of subject matter jurisdiction in an FSIA case, because it may involve an examination of substantive law, "can look like a decision on the merits." Id. at 195.
 
 
 40
 Other circuits have pursued similar inquiries. In Joseph v. Office of the Consulate General of Nigeria, 830 F.2d 1018 (9th Cir. 1987), for instance, the Ninth Circuit held that "[t]he'scope of employment' provision of the tortious activity exception essentially requires a finding that the doctrine of respondeat superior applies to the tortious acts of individuals," id. at 1025, and looked to the California law of respondeat superior to determine whether the individual accused of tortious behavior was "acting within the scope of his office or employment" with respect to the foreign state defendant, see id. at 1025-26. It did so even though a court trying the case on the merits would have had to decide the same respondeat superior question in order to determine whether the defendant government could be held liable for the acts of its employee. Accord, Moran, 27 F.3d at 173 (following Joseph in applying state law applicable to the alleged tort to determine whether the individual alleged tortfeasors were acting within the scope of their employment at the time the events at issue occurred). And in Liu v. Republic of China, 892 F.2d 1419, 1426-31 (9th Cir. 1989), the Ninth Circuit again applied the California doctrine of respondeat superior for similar purposes. The court explicitly noted that "[w]hether the [defendant foreign state] is liable under respondeat superior is crucial not only to the issue of the court's jurisdiction, but also to the merits of the appeal from the denial of [the plaintiff's] judgment on the wrongful death claim" there being pursued. Id. at 1425.[13]
 
 
 41
 IV. Appraisal of Robinson's Claim Under the FSIA
 
 
 42
 The Government of Malaysia is indisputably a sovereign foreign state. It is thus "entitled to immunity unless one of the statutory exceptions applies." Cargill Int'l, 991 F.2d at 1016 (citations omitted). It submitted evidence to the district court bearing on the jurisdictional issue. Robinson responded with evidence of his own.[14] We cannot tell from the brief order of the district court, however, whether it dismissed the complaint on the basis of the allegations in the complaint alone or on the basis of undisputed facts or the resolution of issues of fact. We need not return the case to the district court for clarification, however, because we conclude (i) that the allegations in the complaint, taken as true, do not allege a "tortious act or omission" required to sustain jurisdiction under the FSIA, and (ii) even if the broad allegations could be read sufficiently to allege a non- discretionary tort, Robinson has not met his "burden of going forward with evidence" together with any undisputed facts "showing that under [the non-discretionary torts] exception[] to the FSIA, immunity should not be granted...." Id. (citation omitted).
 
 
 43
 A. Tortious Act or Omission by the Malaysian Government
 
 
 44
 We must first inquire whether Robinson pleaded or came forward with evidence sufficient to show that his claim is for a "tortious act or omission" caused by the Malaysian government.
 
 
 45
 1. New York common law. Under New York law, a landowner must maintain its premises in a reasonably safe condition. See Basso v. Miller, 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976); Scurti v. City of New York, 40 N.Y.2d 433, 437, 354 N.E.2d 794, 795, 387 N.Y.S.2d 55, 56 (1976). But that duty of care extends only to reasonably foreseeable accidents. See Basso, 40 N.Y.2d at 241-42, 352 N.E.2d at 872-73, 386 N.Y.S.2d at 568. In the specific context of a building undergoing construction by independent contractors, this means that "unless the owner created the condition or had actual or constructive notice of the condition for such a period of time that, in the exercise of reasonable care, the owner should have corrected it," the owner owes no duty of care with respect to "defective condition[s]." Richardson v. Simone, 275 A.D.2d 576, 576, 712 N.Y.S.2d 672, 674 (3d Dep't 2000); see also Goodman v. 78 W. 47th St. Corp., 253 A.D.2d 384, 677 N.Y.S.2d 116 (1st Dep't 1998) (holding that the owner of property who retained an independent contractor did not owe any non-delegable duty of care to the plaintiff, who had slipped and fallen on the adjoining sidewalk). The only exceptions to this general absence of a common law duty of care on the part of owners are (i) for negligent hiring or supervision, (ii) for work that is "inherently dangerous," and (iii) "where the employer bears a specific non-delegable duty." Goodman, 253 A.D.2d at 386, 677 N.Y.S.2d at 119.
 
 
 46
 Robinson's complaint alleges that his injuries were "caused by the recklessness, carelessness and negligence of the [Malaysian government] in the ownership, operation, maintenance and control of the premises 313 East 43rd Street, New York, New York." Pl.'s Compl. ¶ 11. The complaint does not allege nor is there evidence to suggest that the Malaysian government or any of its employees or agents left the "white substance" on which Robinson alleges he slipped on the floor of the premises. Indeed, both parties assume that one of the contractors, Howell or Walsh, did. And the complaint does not allege that the Malaysian government in any relevant sense "employed" either of these third parties.
 
 
 47
 Furthermore, there is neither an allegation nor evidence in the record that indicates that the Malaysian government had actual or constructive notice of the condition. And neither the allegations nor the evidence suggests that the Malaysian government engaged in negligent hiring or exercised supervisory control over Walsh or Howell, that construction at the premises was "inherently dangerous," or that the Malaysian government breached a specific non-delegable duty to Robinson thereby causing his injury.
 
 
 48
 The sole duty that Robinson alleges Malaysia breached is that of a landowner to maintain its premises "in a reasonably safe condition, free from dangerous and hazardous conditions for all persons lawfully thereat...." Pl.'s Compl. ¶ 8. The proper question at the jurisdictional threshold is whether this claim is cognizable as a "tortious act or omission" caused by the Malaysian government under New York law. Under the principles of New York law outlined above, it is not.
 
 
 49
 Finally on this score, we note that the conclusory nature of Robinson's allegations alone would give us pause before we would allow them to sustain jurisdiction. See Zappia, 215 F.3d at 253 (finding, on appeal from a Rule 12(b)(1) motion under the FSIA, conclusory allegations in the plaintiff's affidavit insufficient to sustain jurisdiction); accord Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 536-37 (5th Cir. 1992) ("We would not allow such generalized... allegations against an American government entity [under the FTCA] to provoke massive discovery.... It is unimaginable that FSIA would authorize broader exposure to suit of a foreign government instrumentality....") (citations omitted); see also Jazini v. Nissan Motor Co., 148 F.3d 181, 185 (2d Cir. 1998) (refusing to allow "conclusory non-fact-specific jurisdictional allegations" to permit the plaintiff to obtain extensive discovery on that issue). To sustain federal jurisdiction on generic allegations of "negligence... caused by" a "dangerous and defective condition," Pl.'s Compl. ¶ 10, absent an assertion or evidence of a factual predicate for such jurisdiction, would invite plaintiffs to circumvent the jurisdictional hurdle of the FSIA by inserting vague and conclusory allegations of tortious conduct in their complaints -- and then to rely on the federal courts to conclude that some conceivable non-discretionary tortious act falls within the purview of these generic allegations under the applicable substantive law. This is at odds with the goal of the FSIA to enable a foreign government to obtain an early dismissal when the substance of the claim against it does not support jurisdiction.
 
 
 50
 We therefore hold that Robinson has neither pleaded nor come forward with evidence sufficient to show that his claim is for a "tortious act or omission" caused by the Malaysian government.
 
 
 51
 2. New York labor law. On appeal, Robinson also invokes New York Labor Law §§ 200(1) and 241(6).[15] As far as we can tell, this theory was not raised before the district court. In the absence of "manifest injustice," we will not hear such an assertion. See Singleton v. Wulff, 428 U.S. 106, 120 (1976); 767 Third Ave. Assocs. v Consulate General of the Socialist Federal Republic of Yugoslavia, 218 F.3d 152, 162 (2d Cir. 2000), and section IV of this opinion, below.[16]
 
 B. "Non-Discretionary" Conduct
 
 52
 Because we conclude that Robinson's claim is not for a "tortious act or omission" caused by the Malaysian government, a jurisdictional prerequisite, we affirm the district court's dismissal on that basis. We do not reach the question of whether the alleged conduct of the Malaysian government was "discretionary" for purposes of the FSIA.
 
 V. The "Commercial Activities" Exception
 
 53
 Finally, Robinson urges us in the alternative to sustain jurisdiction under the "commercial activities" exception to the FSIA, 28 U.S.C. § 1605(a)(2). He did not raise this argument in the district court, and the court did not consider it. We likewise decline to consider it on appeal because we find no "manifest injustice" sufficient to justify departure from the "general rule... that a federal appellate court does not consider an issue not passed upon below." Singleton, 428 U.S. at 120; see also 767 Third Ave. Assocs., 218 F.3d at 162 (finding, where plaintiffs invoked the FSIA for the first time on appeal, no reason to depart from the settled principle that, absent "manifest injustice," appellate courts do not pass on an issue not raised in the trial court).
 
 
 54
 The only reason Robinson offers for failure to raise the "commercial activities" exception in the district court is that his attorneys neglected the filing deadline and therefore were required to brief the issues on an expedited basis. There is no "manifest injustice" here. We decline to address this argument in the first instance on appeal.
 
 CONCLUSION
 
 55
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 NOTES:
 
 
 [1]
 Robinson's brief states that Malaysia's Deputy Permanent Representative to the United Nations, Mohammad Kam Yan Yahaya, testified that Malaysian "representatives... were at the premises at the time of the accident." Appellant's Br. at 4. Robinson asserts that Yahaya's testimony on this point conflicts with the Malaysian government's previous representations that "no one from its staff had moved into the building at [that] time." Id. The brief is plainly mistaken. Yahaya states in his affidavit that "the only representatives of Malaysia employed by The Permanent Mission of Malaysia located at 313 East 43rd Street... are diplomats entitled to full diplomatic immunity" and associated staff. Yahaya did not testify that the Malaysian government's employees were, at the time of the accident, "at the premises." Robinson's deposition testimony confirms that, at the time of his accident, the Malaysian government had not yet moved "any kind of offices" into the premises.
 
 
 [2]
 The Government of Malaysia refers to the premises as a "foreign mission to the United States." It also asserts that the Malaysian Mission to the United Nations is located there.
 
 
 [3]
 The Yahaya affidavit refers to the date of the accident as November 24, 1994, but the plaintiff's submissions in the district court and his deposition testimony make it clear that the accident occurred on November 29, 1994. The precise date is immaterial, however. The defendant does not dispute that it owned the premises on the date of Robinson's accident.
 
 
 [4]
 Although Robinson brought suit alleging jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights and elective franchise jurisdiction), the parties and the district court have proceeded as though the complaint had been amended properly to plead jurisdiction under § 1330, and we follow suit.
 
 
 [5]
 "The judicial Power [of the United States] shall extend to all Cases... arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." U. S. Const., art. III, § 2.
 
 
 [6]
 We have sometimes said that the district court "may," and sometimes that it "must," refer to proffered evidence in deciding a 12(b)(1) motion on FSIA grounds. Compare, e.g., Filetech S.A., 157 F.3d at 932 ("Our rule is that, on a 'challeng[e] [to] the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.'") (quoting Antares Aircraft, L.P. v. Federal Republic of Nigeria, 948 F.2d 90, 96 (2d Cir. 1991), vacated on other grounds, 505 U.S. 1215 (1992)) (alteration in the original; emphasis added) with Cargill Int'l, 991 F.2d at 1019 ("In resolving the jurisdictional dispute, the district court must review the pleadings and any evidence before it....") (emphasis added). There is no inconsistency. A district court "may" consult evidence to decide a Rule 12(b)(1) motion in contrast with a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, where it may not. It "must" do so if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction. See Exchange Nat'l Bank of Chicago v. Touche Ross & Co., 544 F.2d 1126, 1130-31 (2d Cir. 1976) (discussing differences between Rule 12(b)(1) and Rule 12(b)(6) motions), modified on other grounds, Chemical Bank v. Arthur Andersen Co., 726 F.2d 930 (2d Cir.), cert. denied, 469 U.S. 884 (1984).
 
 
 [7]
 The defendant must first "present[] a prima facie case that it is a foreign sovereign," Cargill Int'l, 991 F.3d at 1016, but because, in this case, the plaintiff concedes that the defendant is a foreign sovereign, that is not an issue here.
 
 
 [8]
 According to decisions of other courts, the defendant must show that the alleged exception does not apply by a preponderance of the evidence. See, e.g., Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc., 179 F.3d 1279, 1290 (11th Cir. 1999); Joseph v. Office of Consulate General of Nigeria, 830 F.2d 1018, 1021 (9th Cir. 1987); Alberti v. Empresa Nicaraguense de la Carne, 705 F.2d 250, 255-56 (7th Cir. 1983); Kao Hwa Shipping Co. v. China Steel Corp., 816 F. Supp. 910, 915 (S.D.N.Y. 1993).
 
 
 [9]
 The factors at work here bear a family resemblance to those that in part animate the rule permitting government employees to appeal in some cases from the loss of a motion for summary judgment made on qualified immunity grounds. "The entitlement is an immunity from suit rather than a mere defense to liability;... it is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis deleted).
 
 
 [10]
 If the plaintiff did not sufficiently allege the commission of a tort by the Malaysian government but did, in the course of the litigation of the 12(b)(1) motion, proffer sufficient evidence to establish it, we assume that the district court would so find under its obligation to "review... any evidence before it," Cargill Int'l, 991 F.2d at 1019, and permit the plaintiff properly to replead his cause of action pursuant to Fed. R. Civ. P. 15(a).
 
 
 [11]
 While choosing what law to look to in deciding whether a non- discretionary tort has been pled or factually supported may raise significant issues in the course of deciding whether the court has subject matter jurisdiction, cf. First Fid. Bank, N.A. v. Government of Antigua & Barbuda, 877 F.2d 189, 194 & n.3, 197-200 (2d Cir. 1989) (debating whether New York or federal common law governed to determine whether the "commercial activities" exception applied), only New York law is implicated here.
 
 
 [12]
 In First Fidelity, the majority "assume[d] without deciding" that New York law governed the ambassador's actions, though it noted its view that application of the federal common law rule, which Judge Newman, in dissent, argued should govern, would not change the result. 877 F.2d at 194 n.3. Judge Newman in no way suggested, however, that application of federal common law of agency to resolve a jurisdictional appeal under the FSIA was inappropriate. To the contrary, he applied the federal common law extensively to reach a result contrary to the majority holding. See id. at 197-200 (Newman, J., dissenting).
 
 
 [13]
 The Alien Tort Claims Act ("ATCA"), 28 U.S.C. § 1350, which provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States," similarly identifies certain substantive law violations as jurisdictional pleading requirements. See Bigio v. Coca-Cola Co., 239 F.3d 440, 447 (2d Cir. 2000) (requiring that, under the ATCA, the plaintiff must plead a violation of the law of nations at the jurisdictional threshold); Kadic v. Karadzic 70 F.3d 232, 238 (2d Cir. 1995) ("Because the [ATCA] requires that plaintiffs plead a 'violation of the law of nations' at the jurisdictional threshold, this statute requires a more searching review of the merits to establish jurisdiction than is required under the more flexible 'arising under' formula of section 1331 [federal question jurisdiction].") (quoting Filartiga v. Pena-Irala, 630 F.2d 876, 887-88 (2d Cir. 1980)), cert. denied, 518 U.S. 1005 (1996).
 
 
 [14]
 Robinson's complaint, because it was verified, also constituted evidence before the court. See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).
 
 
 [15]
 Section 200(1) provides in pertinent part: All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons....
 Section 241(6), provides in pertinent part: All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.
 
 
 [16]
 We do note that neither the complaint nor the evidentiary record makes out the factual predicate required for a violation of these statutes because Robinson is neither alleged nor shown to be among "the special class for whose protection these provisions [inter alia, N.Y. Lab. Law §§ 200 and 241] were adopted...." Agli v. Turner Constr. Co., 246 A.D.2d 16, 22, 676 N.Y.S.2d 54, 57-58 (1st Dep't 1998). The New York Court of Appeals has held that §§ 200 and 241 apply only to workers "permitted or suffered to work on a building or structure and... hired by someone, be it owner, contractor or their agent." Mordkofsky v. V.C.V. Development Corp., 76 N.Y.2d 573, 576-77, 563 N.E.2d 263, 265, 561 N.Y.S.2d 892, 894 (1990). Robinson neither alleged nor offered evidence to suggest that he falls within this class. See Blandon v. Advance Contracting Co., 264 A.D.2d 550, 552, 695 N.Y.S.2d 36, 38 (1st Dep't 1999) ("The statutory protection does not extend, for example, to... duties as a night watchman or security guard."); see also Shields v. St. Marks Hous. Assocs., L.P., 230 A.D.2d 903, 646 N.Y.S.2d 854 (2d Dep't 1996) (concluding that security guard for a construction company who sued the owner of the site under § 241(6) did not fall within the class of persons protected by New York Labor Law).
 
 
 
 56
 SOTOMAYOR, Circuit Judge, concurring in the judgment:
 
 
 57
 Our holding today is narrow: Robinson's failure to allege sufficiently a tort claim against Malaysia deprived the district court of jurisdiction to entertain this suit under 28 U.S.C. § 1605(a)(5), which extends jurisdiction only to non-discretionary torts. Concerned that some of the language of the majority's opinion might be read to reach beyond this holding, I write to emphasize what we have decided and what has been left for another day.
 
 
 58
 The majority's opinion correctly states that "[f]ederal jurisdiction under this FSIA exception to immunity exists... only if (i) the plaintiff claims some injury `caused by the tortious act or omission' of a foreign state; and (ii) this act or omission was `non- discretionary.'" Ante, at 140. As the opinion observes, because "Robinson's claim fails in the first respect [we] therefore need not determine whether it succeeds in the second." Ante, at 140. The opinion ably explains that Robinson has failed to allege, under applicable New York law, that Malaysia has committed a tort against him. Ante, at 145-146. For that reason, the district court had no jurisdiction to hear Robinson's claim under 28 U.S.C. § 1605(a)(5). It is unnecessary, therefore, to speculate on what might have become of Robinson's complaint on this Fed. R. Civ. P. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction had Robinson sufficiently alleged that Malaysia had committed a tort.
 
 
 59
 Accordingly, I find no basis for the majority's reference to the merits of Robinson's claim or its suggestion that the district court could have reached the merits on this Fed. R. Civ. P. 12(b)(1) motion. I believe that the distinction between the sufficiency of Robinson's allegations and whether those allegations have any merit is important because there is good reason to believe that jurisdiction under the non- discretionary tort exception - at least insofar as the "tort" is concerned - turns on a plaintiff's allegations, not on their ultimate merit.
 
 
 60
 I do not dispute the general proposition noted by the majority opinion that, when jurisdiction depends on certain facts, and the moving party under Fed. R. Civ. P.12(b)(1) challenges these facts, the courts can dig beneath the allegations to decide the necessary jurisdictional facts. See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., 484 U.S. 49, 68 (1987) (Scalia, J., concurring in part and concurring in the judgment) ("It is well ingrained in the law that subject-matter jurisdiction can be called into question... by challenging the accuracy of the jurisdictional facts alleged."). One clear example of this principle in the FSIA comes from the separate subsection that provides for jurisdiction over a foreign state that has waived its immunity from suit. 28 U.S.C. § 1605(a)(1). If a plaintiff, to establish jurisdiction, contends that a foreign state waived its immunity, a defendant can rightfully move under Fed. R. Civ. P. 12(b)(1), claiming it made no such waiver. The district court would then have to resolve this issue of fact as a jurisdictional matter. See, e.g., Phoenix Consulting, Inc. v. Angola, 216 F.3d 36, 41 (D.C. Cir. 2000) (finding that "[t]he district court was required to resolve this factual dispute material to its subject matter jurisdiction" after plaintiff invoked the FSIA waiver exception and defendant responded by presenting evidence that the signature on the contract containing the waiver had been forged).
 
 
 61
 Congress, in enacting the FSIA, required different facts to establish jurisdiction under the statute's various subsections. Our task in construing what jurisdictional facts are required under 28 U.S.C. § 1605(a)(5) is one of statutory interpretation. The majority opinion's mention of the merits of Robinson's tort claim - and not just Robinson's allegations - focuses attention on the statutory phrase "the tortious act or omission of that foreign state," as a jurisdictional prerequisite of 28 U.S.C. § 1605(a)(5). Although this reading is consonant with the text, I have found no court that has adopted the view that jurisdiction under 28 U.S.C. § 1605(a)(5) depends upon whether the plaintiff has a meritorious tort claim. Such an approach would lead a district court to decide the merits of the case in order to determine whether it had jurisdiction to decide the merits. I also know of no other federal statute that requires such an approach to the jurisdictional issue. More to the point, this construction would empty of meaning the concept of immunity from suit, the cornerstone of the FSIA, by removing the jurisdictional gateway to the statute and allowing a determination on the merits before jurisdiction is established. I think all of these are indications that the majority's suggested interpretation has gone astray. Cf. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1990) ("If... a decision of the jurisdictional issue requires a ruling on the merits of the case, the decision should await a determination of the merits either by the court on a summary judgment motion or by the fact finder at trial.").
 
 
 62
 A more plausible reading would frame the textual phrase "the tortious act or omission" within the earlier statutory language that concerns "any case... in which money damages are sought" for personal injury resulting from the tort committed by a foreign state. 28 U.S.C. § 1605(a)(5). Under this reading, the initial jurisdictional fact that a plaintiff must show, before reaching the issue of whether the tort was non-discretionary, is whether the plaintiff has presented a tort claim against the foreign state. This construction reflects the understanding in the legislative history of the FSIA that Section 1605(a)(5) encompasses "claims for personal injury or death, or for damage to or loss of property, caused by the tortious act or omission of a foreign state." H.R. Rep. No. 94-1487, at 21 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6619 (emphasis added); see also Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488 n.11 (1983) (referring to Section 1605(a)(5) as involving "actions for certain noncommercial torts within the United States"). One might complain that this sets the threshold so low as to diminish the value of foreign sovereign immunity, but I think this is the choice Congress made. The legislative history of the FSIA makes it clear that Congress intended to treat foreign states the same as any other defendant in certain tort cases, stating that "[t]he purpose of section 1605(a)(5) is to permit the victim of a traffic accident or other noncommercial tort to maintain an action against the foreign state to the extent otherwise provided by law." H.R. Rep. No. 94-1487, at 21 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6620 (emphasis added).
 
 
 63
 Final resolution of this issue of statutory interpretation can await another day.[1] Our holding today depends on the much simpler proposition that because Robinson did not sufficiently allege that Malaysia had committed a tort, Robinson cannot avail himself of the FSIA's exception to immunity for non-discretionary torts and, therefore, the district court did not err in granting Malaysia's Rule 12(b)(1) motion.
 
 
 
 NOTE:
 
 
 [1]
 This day may not be swift in coming. Litigants more commonly arrive at the result produced by this Fed. R. Civ. P.12(b)(1) motion for lack of subject matter jurisdiction by moving early for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, or later for summary judgment under Fed. R. Civ. P. 56.