*Prime International Trading, Ltd., et al. v. BP PLC, et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of August, two thousand nineteen.

PRESENT:
> DENNIS JACOBS,
> RICHARD J. SULLIVAN,
> > *Circuit Judges*
> EDWARD R. KORMAN,
> > *District Judge.*\*

_____

PRIME INTERNATIONAL TRADING, LTD., WHITE OAKS FUND LP, KEVIN MCDONNELL, ANTHONY INSINGA, ROBERT MICHIELS, JOHN DEVIVO, NEIL TAYLOR, AARON SCHINDLER, PORT 22, LLC, ATLANTIC TRADING USA, LLC, AND XAVIER LAURENS,

> *Plaintiffs-Appellants,*

> v.                                                                No. 17-2233

_____

\* Judge Edward R. Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

BP P.L.C., TRAFIGURA BEHEER B.V., TRAFIGURA AG, PHIBRO TRADING L.L.C., VITOL S.A., MERCURIA ENERGY TRADING S.A., HESS ENERGY TRADING COMPANY, LLC, STATOIL US HOLDINGS INC., SHELL TRADING US COMPANY, BP AMERICA, INC., VITOL, INC., BP CORPORATION NORTH AMERICA, INC., MERCURIA ENERGY TRADING, INC., MORGAN STANLEY CAPITAL GROUP INC., PHIBRO COMMODITIES LTD., SHELL INTERNATIONAL TRADING AND SHIPPING COMPANY LIMITED, STATOIL ASA, AND ROYAL DUTCH SHELL PLC,

     *Defendants-Appellees.*[+]

_____

| | |
|---|---|
| FOR APPELLANTS: | DAVID E. KOVEL (Andrew M. McNeela *on the brief*), Kirby McInerney LLP, New York, NY, *for Plaintiffs-Appellants.* |
| FOR APPELLEES: | RICHARD C. PEPPERMAN (Daryl Libow, Amanda Davidoff, Austin L. Raynor *on the brief*), Sullivan & Cromwell LLP, New York, NY *for Defendants-Appellees BP PLC, BP America, Inc. and BP Corporation North America, Inc.* |
| | DAVID B. SALMONS (Steven A. Reed, R. Brenda Fee, Michael E. Kenneally, *on the brief*) Morgan, Lewis & Bockius LLP, Philadelphia, PA *for Defendant-Appellee Shell International Trading and Shipping Company Limited.* |
| | PERRY A. LANGE (David S. Lesser *on the brief*) Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC *for Defendant-Appellee Statoil ASA.* |

                                    _____

_____

[+] The Clerk of Court is respectfully directed to amend the official caption as listed above.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,**

**AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiffs-Appellants ("Plaintiffs") appeal from a judgment of the United States District Court for the Southern District of New York (Carter, *J.,*) dismissing (1) Plaintiffs' claims against Defendant-Appellee Shell International Trading and Shipping Company Limited ("STASCO") for lack of personal jurisdiction, (2) Plaintiffs' claims against Defendant-Appellee Statoil ASA ("Statoil") for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), and (3) Plaintiffs' remaining claims against all Defendants-Appellees ("Defendants") for failure to state a claim. In this summary order, we affirm the dismissal of all of Plaintiffs' Sherman Act antitrust claims, as well as the dismissal of Statoil for lack of subject-matter jurisdiction, and STASCO for lack of personal jurisdiction. We affirm the district court's dismissal of Plaintiffs' Commodity Exchange Act claims in a separately filed opinion ("Opinion").

For the purposes of this summary order, we rely on the facts set forth in the Opinion, and repeat only those facts necessary to explain our decision here.

I. SHERMAN ACT CLAIMS

Plaintiffs allege that Defendants engaged in price fixing, monopolization, and conspiracy to monopolize under the Sherman Act, 15 U.S.C. §§ 1, 2. The

3

district court dismissed Plaintiffs' Sherman Act claims because they failed to plausibly allege antitrust standing. We review dismissal of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Section 4 of the Clayton Act provides:

> [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue . . . in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

15 U.S.C. § 15(a). Section 4 has been construed to "require a showing of antitrust injury." *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 772 (2d Cir. 2016). Antitrust injury is "the type [of injury] the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977). Typically, only "participants in the defendants' market" can show antitrust injury, *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016), but there is a narrow exception for "parties whose injuries are 'inextricably intertwined' with the injuries of market participants," *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 n.5 (9th Cir. 1999).

As is often the case with antitrust claims, the Court must first determine the "relevant market" for purposes of assessing antitrust injury. *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 159. As a general matter, the "relevant market" is the market that is "directly restrained" by Defendants' alleged anticompetitive activity. *See id*. at 162. There are two such relevant markets here. First, Plaintiffs allege that Defendants, as producers, refiners, and sellers of Brent crude oil, manipulated the price of physical Brent crude traded in the North Sea so as to increase Defendants' profit margins in their oil businesses. Accordingly, as the parties seem to agree, a "relevant market" for the purposes of this case must be, at a minimum, the physical Brent crude market. *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 162 (identifying the warehouse storage market as a relevant market because "[a]ll of th[e] conduct took place (if at all) in [that] market"). Second, Plaintiffs also claim that Defendants manipulated the price of Brent crude in order to affect the Dated Brent Assessment, which would in turn boost Defendants' profit on derivatives that were linked to, or otherwise tracked, that assessment. As such, we agree with the district court that a second relevant market is "the market for any derivative instrument that directly incorporates Dated Brent as benchmark or pricing element."

Plaintiffs do not suggest that they participated in the physical market for Brent crude oil. Accordingly, the question before the Court is whether Plaintiffs participated in the market for derivative instruments directly pegged to the Dated Brent Assessment. *See In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 162. Plaintiffs have not made this showing. As an initial matter, Plaintiffs acknowledge that the operative pricing benchmark for Brent futures and derivative products is the ICE Brent Index, not the Dated Brent Assessment. And Plaintiffs further concede that the Dated Brent Assessment is not "express[ly] incorporat[ed]" into the ICE Brent Index. Instead, Plaintiffs rest their theory of incorporation on the fact that the Dated Brent Assessment "closely correlates" with the ICE Brent Index. But Plaintiffs could not have suffered an antitrust injury if they dealt in products that were not linked to the benchmark they complain of, for they would not be a "participant in the very market that is directly restrained." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 161. Their efforts to re-write their complaint – in order to show that the ICE Brent Index directly incorporates the Dated Brent Assessment – does not save their claim. While Plaintiffs state in their complaint, for example, that a "critical component of the Brent Index is the Platts price," J. App'x 1980, there is no allegation that the "Platts price" and "Dated Brent

6

Assessment" are synonymous – indeed, Platts publishes price reports across a variety of energy submarkets. As to the few products that Plaintiffs say directly incorporate the Dated Brent Assessment, such as the NYMEX Brent CFD, Plaintiffs make no specific allegations that they bought or sold these particular contracts. And a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, we affirm the district court's dismissal of Plaintiffs' Sherman Act claims on the ground that they have not adequately pleaded an antitrust injury in the markets that Defendants allegedly directly restrained.

## II. STATOIL AND THE FSIA

The district court concluded that it lacked subject-matter jurisdiction over Plaintiffs' claims against Statoil – an oil and gas company primarily owned by the Kingdom of Norway – because Plaintiffs failed to demonstrate that Statoil was subject to the commercial-activity exception under the FSIA. We review dismissal for lack of subject-matter jurisdiction under the FSIA *de novo*. *See Robinson v. Government of Malaysia*, 269 F.3d 133, 138 (2d Cir. 2001).

"The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court," *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d

7

171, 175 (2d Cir. 2010), and, as such, a "foreign state is immune from federal court jurisdiction unless a specific exception to the FSIA applies," *id*. The FSIA's commercial-activity exception abrogates foreign sovereign immunity where:

> [T]he action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605. Because the Kingdom of Norway owns two-thirds of Statoil, Statoil is an "instrumentality of a foreign state" and thus subject to the FSIA. *See* 28 U.S.C. § 1603(b)(2). The district court determined that the relevant "commercial activity" for purposes of evaluating this FSIA exception is the "allegedly manipulative transactions and reporting that allegedly gave rise to manipulation on NYMEX and ICE."

We agree with the district court that the manipulative trading and price reporting that occurred overseas is the applicable "commercial activity" here, because such activity is the "'but for' cause of the judgments that are the ground of this suit." *Kensington*, 505 F.3d at 155. In other words, because the overseas manipulation "serves as the basis for [P]laintiffs' claims," *Garb v. Republic of Poland*,

8

440 F.3d 579, 586 (2d Cir. 2006), that manipulation serves as the commercial activity under the FSIA.

And we further agree with the district court that Statoil's activities overseas do not satisfy the FSIA's commercial-activity exception. To qualify as a "direct effect in the United States," the effect "[must] follow[] 'as an immediate consequence of the defendant's activity.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618 (1992) (internal alterations omitted). We have described "immediate" to mean that there was no "intervening element" between the "foreign state's commercial activity and the effect." *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 74 (2d Cir. 2010).

There is plainly no "direct effect" here. The "ripple effects" that Plaintiffs complain of occurred "at the end of a long chain of causation." *Virtual Countries, Inc. v. Republic of S. Africa*, 300 F.3d 230, 237 (2d Cir. 2002). Statoil allegedly helped to manipulate the price of Brent crude in Europe, which was then reported to agencies such as Platts, whose price reports were then folded into the Dated Brent Assessment, which assessment was then indirectly incorporated into a benchmark index – the ICE Brent Index – which was then used to price derivative and futures contract across the globe – contracts that Plaintiffs traded in. Even aside from the

9

"long chain" of causal inferences, Statoil's "commercial activity" in Europe's North Sea was "mediated by numerous actions by third parties." *Virtual Countries, Inc.*, 300 F.3d at 237. Indeed, it was both an attenuated causal link, as well as the presence of independent intervening actors, that doomed plaintiffs' claims in *Virtual Countries, Inc.*, where the principal claim was that a press release issued by the Republic of South Africa discouraged third-parties from doing business in the United States. And like *Virtual Countries*, there are several layers of actors that "intervened between" Statoil's foreign, commercial activity and any direct effects in the United States. That is, there were other traders in the physical Brent crude market; there was Platts, which created and then disseminated price reports; and there were the exchanges themselves, which contained multitudes of other traders and settled contracts differently. Accordingly, "[t]his tangled causal web does not provide the requisite immediacy to establish jurisdiction," *id.* at 238, and we affirm the district court's dismissal of Statoil for lack of subject-matter jurisdiction.

## III. PERSONAL JURISDICTION AND STASCO

Finally, the district court dismissed Plaintiffs' claims against STASCO because it lacked personal jurisdiction over that entity. In order to establish specific, personal jurisdiction, Plaintiffs must demonstrate that their claims against

10

STASCO "arise out of or relate to [STASCO's] contacts" with the United States.[1]

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011).

STASCO is a limited company incorporated under the laws of England and headquartered in London. Plaintiffs allegations against STASCO are limited to their "manipulative physical trades in Brent crude oil" in Europe. Plaintiffs make no allegations that STASCO manipulated markets in the United States or conducted any physical Brent trades in the United States – indeed, "no part of [STASCO's] course of conduct" occurred in the United States. *Walden v. Fiore*, 571 U.S. 277, 288 (2014). Plaintiffs suggest that STASCO "aimed" the effects of its European trading activities at the United States. *Calder v. Jones*, 465 U.S. 783, 789 (1984). But Plaintiffs do not allege anything more than STASCO's "mere knowledge that United States citizens might be wronged," which is plainly insufficient to confer specific, personal jurisdiction. *Waldman*, 835 F.3d at 338. And the idea that STASCO sought *benefits* in the United States from their conduct abroad does not permit specific, personal jurisdiction either, because it is the "suit-

---

[1] We assume without deciding that the "minimum contacts" inquiry here surveys STASCO's contacts with the United States as a whole, as opposed to contacts with a particular state. *See Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 329 (2d Cir. 2016). In any event, since Plaintiffs fail to demonstrate a critical mass of minimal contacts between STASCO and the United States, dismissal would be warranted even if we were to apply the narrower forum analysis.

related conduct" that is crucial – in other words, "the conduct that could have subjected them to liability." *Id.* at 335. All of *that* conduct occurred abroad. Accordingly, we affirm the district court's dismissal of STASCO.

IV. CONCLUSION

For the foregoing reasons, and for the reasons stated in the Opinion, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk