10-4892-cv
*USAA Casualty Ins. Co. v. Permanent Mission, et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: December 6, 2011                                      Decided: May 25, 2012)

Docket No. 10-4892-cv

———————————————————————

USAA CASUALTY INSURANCE CO., *as subrogee of Robert Adelman*,

*Plaintiff-Appellee*,

v.

PERMANENT MISSION OF THE REPUBLIC OF NAMIBIA,

*Defendant-Appellant*,

RYBACK DEVELOPMENT, INC., FEDERATION DEVELOPMENT CORP.,

*Defendants.*

———————————————————————

Before: CABRANES and WESLEY, Circuit Judges.[1]

The Permanent Mission of the Republic of Namibia to the United Nations ("the Mission")

brings this interlocutory appeal from the District Court's denial of immunity under the Foreign

Sovereign Immunities Act. The District Court (Laura Taylor Swain, *Judge*) held that the Mission, an

instrumentality of the Republic of Namibia, is not immune from a tort suit based on its alleged failure

to comply with the New York City Building Code.

Affirmed.

---

[1] The Honorable Roger J. Miner, originally a member of the panel, died prior to the resolution
of this case. The two remaining members of the panel, who are in agreement, have determined the

ROBERT WILLIAM PHELAN, Cozen O'Connor, New York, NY, *for* Plaintiff-Appellee USAA Casualty Insurance Co.

JAY M. LEVIN (Carolyn P. Short, *on the brief*), Reed Smith LLP, Philadelphia, PA, *for* Defendant-Appellant Permanent Mission of the Republic of Namibia.

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether the Permanent Mission of the Republic of Namibia to the United Nations ("the Mission" or "Permanent Mission") may be sued for the damage to an adjoining property caused by its alleged failure to comply with the New York City Building Code ("the Building Code").[2] The Mission brings this interlocutory appeal from a November 17, 2010 order of the United States District Court for the Southern District of New York (Laura Taylor Swain, *Judge*) denying it immunity under the Foreign Sovereign Immunities Act ("FSIA"),[3] in the circumstances presented.

We affirm.

## BACKGROUND[4]

At some point before the events that gave rise to this action, the Republic of Namibia made the decision to house the chancery, or base of operations, of its Permanent Mission to the United Nations in a Manhattan townhouse located at 135 E. 36th Street (the "Building"). The Mission commissioned extensive interior construction in order to render the Building suitable for a diplomatic mission. To

---

matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458–59 (2d Cir. 1998).

[2] N.Y. City Admin. Code tit. 28, ch.1.

[3] 28 U.S.C. §§ 1602–1611.

[4] The facts in this section are drawn from the Amended Complaint, the allegations of which we assume to be true for the purpose of reviewing a district court decision dismissing a complaint pursuant to either Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (Rule 12(b)(1)); *Flagler v. Trainor*, 663 F.3d 543, 546 n.2 (2d Cir. 2011) (Rule 12(b)(6)); *see generally Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).

perform the proposed construction, the Mission hired an independent general contractor, Federation

Development Corporation ("Federation"), which in turn hired a subcontractor, Ryback Development,

Inc. ("Ryback") (together with Federation, the "Contractors").

The townhouse adjoining the Building, 133 E. 36th Street, was then owned by Robert Adelman

and insured by USAA Casualty Insurance Co. ("USAA"). The Building was separated from the

Adelman townhouse by a brick and mortar party wall, upon which the support beams of the Adelman

townhouse rested.

In early December 2008, Ryback employees began pouring a reinforced concrete wall in the

interior of the Building, alongside the existing party wall. On December 15, as the concrete wall was

being poured, the party wall collapsed, causing substantial damage to Adelman's property. Adelman

filed an insurance claim with USAA, which paid Adelman $397,730 for his damages.

On April 21, 2010, USAA brought suit as Adelman's subrogee against the Contractors and the

Mission (jointly, the "defendants") in New York State Supreme Court.[5] On May 26, 2010, the Mission

removed the suit to federal court, and on July 8, 2010, with court approval, USAA filed an amended

complaint (the "Amended Complaint"). The Amended Complaint alleged five counts against the

Mission, its contractor, and its subcontractor: (1) negligence; (2) nuisance; (3) trespass;

(4) ultrahazardous activity; and (5) *res ipsa loquitur*.[6]

---

[5] Adelman has since brought his own suit against the defendants, which was consolidated with the instant case on October 18, 2011. *See USAA Casualty Ins. Co. v. Permanent Mission of the Republic of Namibia*, No. 10 Civ. 4262(LTS), Docket Entry 76 (S.D.N.Y. Oct. 18, 2011). We do not address Adelman's suit in this appeal.

[6] As the Mission correctly notes in its opening brief, the doctrine of *res ipsa loquitur* does not constitute a separate cause of action. *See Frew v. Hosp. of Albert Einstein Coll. of Med. Div. of Montefiore Hosp. & Med. Ctr.*, 76 A.D.2d 826, 826 (2d Dep't 1980) ("*Res ipsa loquitur* is an evidentiary rule and as such does not constitute a separate cause of action."). We list it here merely in the interest of completeness.

3

In alleging that the Mission had committed a tort against Adelman, USAA relied primarily upon Section 3309.8 of the New York City Building Code. In pertinent part, that section states:

> When any construction or demolition operation exposes or breaches an adjoining wall, including load bearing and non load-bearing walls as well as party walls and non party walls, the person causing the construction or demolition operation shall, at his or her own expense, perform the following: (1) Maintain the structural integrity of such walls, have a registered design professional investigate the stability and condition of the wall, and take all necessary steps to protect such wall.[7]

USAA alleged that the Mission had violated that section of the Building Code by, among other things, "failing to shore up the common wall."

On July 28, 2010, the Mission moved to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1),[8] arguing that the District Court lacked subject matter jurisdiction over the Mission because it is entitled to sovereign immunity under the FSIA. It also argued that the Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[9]

On November 17, 2010, the District Court granted the motion to dismiss in part, denied it in part, and held that the Mission was not entitled to sovereign immunity.[10] Reasoning that the Mission's case "falls squarely within the [tortious activity] exception" to the immunity from suit conferred by the

---

[7] N.Y.C. Code § 3309.8.

[8] Federation and Ryback did not move to dismiss and have not yet answered the Amended Complaint. The case against the Contractors was stayed by the District Court pending the outcome of this appeal.

[9] The Mission also moved to dismiss the Amended Complaint on the ground that it had not been properly served with process pursuant to 28 U.S.C. § 1608(a)(4). The District Court determined that service had not been perfected, but granted USAA leave to properly serve the complaint within sixty days of its order. The District Court also denied USAA's cross-motion, pursuant to Federal Rule of Civil Procedure 4(d)(2), to recover the costs of service. Neither ruling is before us on appeal, but the record shows (and the Mission evidently no longer disputes) that proper service upon the Mission was effected pursuant to the order of the District Court.

[10] *USAA Casualty Ins. Co. v. Permanent Mission of the Republic of Namibia*, No. 10 Civ. 4262(LTS), 2010 WL 4739945 (S.D.N.Y. Nov. 17, 2010) ("*USAA I*").

FSIA, the Court held that "[t]he discretionary function provision of 28 U.S.C. § 1605(a)(5)" was "inapplicable to the instant claim."[11] Accordingly, the Court found that it had subject matter jurisdiction and denied the motion to dismiss pursuant to Rule 12(b)(1).[12] With respect to the Mission's motion under Rule 12(b)(6), the District Court granted the motion to dismiss the Third (trespass) and Fourth (ultrahazardous activity) Counts of the Amended Complaint for failure to state a claim. It denied the motion to dismiss with respect to the First (negligence), Second (nuisance), and Fifth (*res ipsa loquitur*) Counts. The District Court's ruling on the Rule 12(b)(6) motion is not before us on appeal.

This appeal followed. The Mission argues on appeal that it is entitled to immunity under the FSIA from this "suit alleging vicarious liability for negligence of independent contractors who were hired to renovate a building to make it suitable for use as the Mission." Br. of Appellant Permanent Mission of the Repub. of Namib. at 4.

## DISCUSSION

A.    *Appellate Jurisdiction and Standard of Review*

We have jurisdiction to hear this interlocutory appeal because the District Court's November 17, 2010 order denying, on the ground of sovereign immunity, the Mission's motion to dismiss the Amended Complaint is immediately appealable under the collateral order doctrine.[13]

We review "*de novo* the district court's conclusions of law regarding jurisdiction under the FSIA."[14] We also review *de novo* "'a dismissal for lack of subject matter jurisdiction where the trial court

---

[11] *USAA I*, 2010 WL 4739945, at *2–3.

[12] Having found that the tortious activity exception applied, the District Court did not address USAA's claim that the Mission's actions also fell within the "commercial activity" and "immovable property" exceptions to the FSIA.

[13] *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012) ("[T]he collateral order doctrine . . . 'allows an immediate appeal from an order denying immunity under the FSIA.'" (quoting *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007))).

dismissed on the basis of the complaint alone or the complaint supplemented by undisputed facts from the record.'"[15]

B.      *The FSIA*

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country."[16] "[A] foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception [to the FSIA] applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state."[17] A foreign state's permanent mission to the United Nations is indisputably the "embodiment" of that state.[18] Accordingly, as USAA concedes, the Mission is entitled to rely on the defense of sovereign immunity unless an exception to the FSIA applies.

USAA argues that three exceptions to the FSIA bestow subject matter jurisdiction over the Mission in this case: (1) the "tortious activity" exception,[19] (2) the "commercial activity" exception,[20]

---

[14] *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 368 (2d Cir. 2006).

[15] *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 138 (2d Cir. 2001) (quoting *Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 252 (2d Cir. 1994)).

[16] *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989).

[17] *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *see* 28 U.S.C. 1604 ("[A] foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.").

[18] *Gray v. Permanent Mission of People's Repub. of Congo to U.N.*, 443 F. Supp. 816, 820 (S.D.N.Y. 1978).

[19] The tortious activity exception provides, in pertinent part, that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (5) . . . in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to . . . (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused[.]" 28 U.S.C. § 1605(a)(5).

6

and (3) the "immovable property" exception.[21]  Because we agree with the District Court that the

tortious activity exception applies, we likewise do not address the applicability of the other two

exceptions.

C.        *The Tortious Activity Exception*

The tortious activity exception to the FSIA "permits courts to exercise jurisdiction over foreign

sovereigns where the plaintiff seeks money damages 'for . . . damage to or loss of property, occurring in

the United States and caused by the tortious act or omission of [the] foreign state . . . .'"[22]  In

determining whether an alleged action is a tort within the meaning of this federal statute, "we have

applied the law of the state in which the locus of injury occurred"[23]—in this case, New York.

Accordingly, we first identify the act or omission complained of, and then address whether that act or

omission is in fact tortious under the law of the State of New York.[24]

---

[20] The commercial activity exception provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]"  28 U.S.C. § 1605(a)(2).

[21] The immovable property exception provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . (4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue."  28 U.S.C. § 1605(a)(4).

[22] *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010) (quoting 28 U.S.C. § 1605(a)(5)) (alteration in the original).

[23] *Id.*; *see Robinson*, 269 F.3d at 142 & n.11.

[24] *Robinson*, 269 F.3d at 142.

USAA argues that the Mission's discussion of the merits of the alleged tort is premature and improper.  *See Robinson*, 269 F.3d at 148 (Sotomayor, J., concurring) (arguing that courts dealing with FSIA immunity question should not address merits issues).  We have previously made clear that, where a full evaluation of a defendant's claim of FSIA immunity requires a discussion of the merits of the underlying complaint, it is "not remarkable," and indeed, may be "inevitabl[e]," that a district court's

1.     *The Tortious Act or Omission*

The omission alleged in this case is the Contractors' failure to "shore up" the party wall between the Mission's property and the adjoining townhouse, owned by Adelman.[25] We therefore turn to the question of whether that omission constitutes a tort under New York law. To answer that question, we must determine whether the duty imposed by the Building Code on the Mission, as landowner, was delegable to its contractors, who conducted the construction.[26] We hold that the Mission was under a nondelegable duty, pursuant to regulation, to ensure that the structural integrity of the party wall was maintained during construction.

a.     *The Mission Had a Duty to Ensure the Structural Integrity of the Party Wall*

Section 3309.8 of the New York City Building Code imposes upon the "person causing . . . construction" within a building the duty to "[m]aintain the structural integrity of [party walls]," and to "take all necessary steps to protect such wall[s]."[27] Under New York law, it is well established that "the words ['person or persons causing['] . . . apply to the owner of the property who employs a third

---

evaluation of a defendant's claim of FSIA immunity will require such an "excursion" into the merits of the plaintiff's case. *See id.* at 143 (majority opinion) ("In making the assessment of whether the plaintiff has alleged actions on the part of the defendant that constitute a tort, the district court may well have taken an excursion into the same legal territory that it would visit in the course of deciding the case on the merits. . . . Courts are . . . regularly called upon to inquire into substantive state or federal law to resolve the threshold question of subject matter jurisdiction under the FSIA"; *see also First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission*, 877 F.2d 189, 194–95 (2d Cir. 1989) (noting that a dismissal for lack of subject matter jurisdiction in an FSIA case "can look like a decision on the merits").

In this case, as will be discussed more fully below, we must touch upon the merits of USAA's claim in order to confirm that the Mission, rather than its Contractors, was under a duty to protect the party wall.

[25] The Mission argues that the relevant acts or omissions for the purpose of the tortious activity exception were its decision to locate its Mission in the Building and to conduct construction in the Building to prepare it for use as a Mission. We disagree. *See* Section C, subsection 2, *post.*

[26] *See Robinson*, 269 F.3d at 142.

[27] N.Y.C. Code § 3309.8(1).

person" to conduct a construction project.[28]  The Mission is the owner of the property, and it

employed the contractor who allegedly failed to shore up the party wall.  Therefore, the regulation

imposes its duty of care directly upon the Mission.[29]

The failure to comply with a duty imposed by the Building Code is, at a minimum, evidence of

negligence and can give rise to tort liability under New York law.[30]  The alleged failure of the Mission to

protect the party wall was a breach of the duty imposed upon it by the Building Code.

         b.         *The Mission's Duty Was Not Delegable to its Contractors*

Our determination that the Building Code imposes a duty of care directly upon the Mission

does not end our inquiry.  Although New York law imposes on property owners a general duty to

---

[28] *Rosenstock v. Laue*, 140 A.D. 467, 470 (1st Dep't 1910) (construing former Section 22 of the Building Code); *see also id.* ("The provision [requiring the 'person causing' an excavation to take specific safety measures] would be of little value if the owner of the property upon which the excavation is made could relieve himself from all obligation to protect his neighbor's property by turning the excavation over to a contractor."); *Victor A. Harder Realty & Constr. Co. v. City of New York*, 64 N.Y.S.2d 310, 317–18 (N.Y. Sup. Ct. 1946) (same).  The Mission contends that the New York cases holding that landowners have a nondelegable duty to comply with provisions of the Building Code regulating excavation are inapposite because no excavation work was alleged to have been undertaken in connection with the construction at issue in this case.  But it is not the *type* of work being conducted and regulated that is salient for our purposes, but rather, the *bearer* of the duty imposed by the regulation.  In this respect, the excavation regulations cited in *Rosenstock* and its progeny are identical to the adjoining wall regulation at issue in this case.  Each places the duty upon the "person causing" the excavation or construction.

[29] The Mission argues that any duty of care imposed by the Building Code was in any event not in force at the time of the accident because USAA has not alleged that the "construction . . . operation expose[d] or breache[d]" the party wall."  N.Y.C. Code § 3309.8.  There is indeed an open question as to whether the party wall was "expose[d] or breache[d]" by the construction in the Building prior to its collapse.  However, in reviewing a decision under Rule 12(b)(1), we draw all reasonable inferences in the plaintiff's favor.  *See Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).  Drawing all inferences in favor of USAA as the nonmoving party, as we must at this stage of the proceedings, *see* Fed. R. Civ. P. 12(b)(6), we assume for the purpose of this appeal that the construction in the Building "expose[d] or breache[d]" the party wall.

[30] Although a violation of the Building Code does not constitute negligence *per se*, *see Yenem Corp. v. 281 Broadway Holdings*, 18 N.Y.3d 481, 489 (2012), or create absolute liability "without regard to negligence," *Elliott v. City of New York*, 95 N.Y.2d 730, 736 (citation omitted), it is evidence of negligence and as such must be considered by the court, *see id.* at 735.

9

maintain their premises in "reasonably safe condition,"[31] that duty can normally be delegated to independent contractors carrying out construction projects. As recently as 2001, in *Robinson v. Government of Malaysia*, we observed that

> [i]n the specific context of a building undergoing construction by independent contractors, . . . unless the owner created the condition or had actual or constructive notice of the condition [and] should have corrected it, the owner owes no duty of care with respect to defective conditions. The only exceptions to this general [rule] are (i) for negligent hiring or supervision, (ii) for work that is inherently dangerous, and (iii) where the employer bears a *specific non-delegable duty*.[32]

In this case, the relevant inquiry is whether the Mission's duty of care was delegable to its contractors, thereby absolving the Mission itself of tort liability. Because we find that the duty was not delegable, we need not, and do not, address the remaining grounds for liability discussed in *Robinson*.

        i.       *New York Law on Nondelegable Duties*

Because New York's courts have not specifically determined whether the particular section of the Building Code at issue in this case imposes a delegable or nondelegable duty, we must determine whether "sufficient precedents exist for us to make a prediction of how the New York Court of Appeals would decide the question."[33] We therefore examine other construction-related statutes and regulations that have been found to create delegable or nondelegable duties.

Under New York law, "a duty will be deemed nondelegable when the responsibility is so important to the community that the employer should not be permitted to transfer it to another."[34] The New York Court of Appeals has repeatedly held that statutes and regulations that address specific

---

[31] *Basso v. Miller*, 40 N.Y.2d 233, 241 (1976) (internal quotation marks omitted).

[32] *Robinson*, 269 F.3d at 145 (emphasis added) (citations, quotation marks, and alterations omitted).

[33] *Goodlett v. Kalishek*, 223 F.3d 32, 37 n.4 (2d Cir. 2000).

[34] *Kleeman v. Rheingold*, 81 N.Y.2d 270, 275 (1993) (internal quotation marks omitted).

types of safety hazards create nondelegable duties of care.[35] As the Court of Appeals has explained, a

regulation will generally create a nondelegable duty where it contains a "specific positive command,"

but not where it merely incorporates "the ordinary tort duty of care," using terms like "adequate,"

"effective," or "suitable."[36] Accordingly, we examine the text of Section 3309.8 to determine whether it

constitutes a "specific positive command,"[37] or merely imposes a "nonspecific and general

obligation[ ]."[38]

       ii.     *Section 3309.8*

As stated above, *see* text at note 7, Section 3309.8 of the Building Code requires that "[w]hen

any construction or demolition operation exposes or breaches an adjoining wall, *including . . . party walls

. . .* the person causing the construction or demolition operation shall . . . (1) [m]aintain the structural

integrity of such walls . . . ."[39]

Section 3309.8 imposes upon the "person causing" the construction the duty to, under specific

circumstances, perform a specific task.[40] We think it plain that this section of the Code contains a

---

[35] *Compare, e.g.*, *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 N.Y.2d 494, 500 (1993) ("It is by now well established that the duty imposed by Labor Law § 240(1) is nondelegable and that an owner . . . who breaches that duty may be held liable in damages regardless of whether it has actually exercised supervision or control over the work."), *with Verdugo v. Seven Thirty One Ltd. P'ship*, 70 A.D.3d 600, 602 (1st Dep't 2010) ("Because . . . §§ 27–127 and 27–128 of the Building Code set forth only nonspecific and general obligations of a building owner, [defendant] was entitled to its affirmative defense of 'acts of another or independent contractor.'" (citation omitted)).

[36] *Morris v. Pavarini Constr.*, 9 N.Y.3d 47, 50 (2007).

[37] *Id.* (internal quotation marks and alteration omitted)

[38] *Verdugo*, 70 A.D.3d at 602.

[39] N.Y.C. Code § 3309.8 (emphasis added).

[40] We need not decide, and express no view on, whether the term "person causing the construction" would also apply to the Contractors. *See Fagan v. Pathe Indus., Inc.*, 274 A.D. 703, 706 (1st Dep't 1949).

"specific positive command" as contemplated by the New York Court of Appeals in *Morris v. Pavarini Construction*.[41]

We accordingly hold that the Section 3309.8 imposes a nondelegable duty upon owners of buildings who commission construction projects to ensure the structural integrity of an exposed or breached party wall. The Mission's alleged failure to shore up, or otherwise protect, the wall would therefore, if proven, constitute a tort within the meaning of the tortious activity exception to the FSIA.[42]

        2.      *The "Exception to the Exception": The Discretionary Function Exception*

Having decided that the Mission's alleged failure to shore up the party wall was a tort, we now turn to the "exception to the exception" that allows a foreign state to retain its immunity when the allegedly tortious activity took place during the exercise of a "discretionary function." The discretionary function exception preserves the immunity of a sovereign nation when it would otherwise be abrogated by the tortious activity exception "if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an element of judgment or choice and are not compelled by statute or regulation, and (2) the judgment or choice in question must be grounded in considerations of public policy or susceptible to policy analysis."[43]

---

[41] 9 N.Y.3d at 50; *see supra* note 36.

[42] The Mission argues that it is absolved of liability by our holding in *Roditis v. United States*, 122 F.3d 108, 111–12 (2d Cir. 1997). In *Roditis,* we held that New York's imposition of a nondelegable duty was preempted by the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"), because the FTCA has been read to "preclude[ ] government liability absent a negligent act, and, thus 'does not extend to liability without fault.'" 122 F.3d at 112 (quoting *Dalehite v. United States*, 346 U.S. 15, 44 (1953)). Such an exception has not been read into the FSIA, and we decline to do so here. We therefore conclude that *Roditis* is inapposite.

[43] *Coulthurst v. United States*, 214 F.3d 106, 109 (2d Cir. 2000) (addressing discretionary function exception of the FTCA) (internal quotation marks omitted).

Cases construing the discretionary function exception in the FSIA draw heavily on case law interpreting a similar exception in the FTCA. *See Swarna v. Al-Awadi*, 622 F.3d 123, 145 (2d Cir. 2010);

"[T]he discretionary function rule is designed to prevent 'judicial "second-guessing" of . . .

decisions grounded in social, economic, and political policy [of a foreign state] through the medium of

an action in tort.'"[44]  Therefore, if the act or omission deemed to be tortious is "based upon the

exercise or performance or the failure to exercise or perform a discretionary function regardless of

whether the discretion be abused,"[45] the foreign sovereign nation retains its immunity from suit under

the FSIA.

> a.    *"Compelled by Statute or Regulation"*

As we held in *Coulthurst v. United States*, if an action is "compelled by statute or regulation," it is

not discretionary for purpose of the discretionary function exception.[46]  In *United States v. Gaubert*, the

Supreme Court explained that

> [t]he requirement of judgment or choice is not satisfied if a federal statute, regulation or
> policy specifically prescribes a course of action for the [Government] to follow. . . .  [I]f
> a regulation mandates particular conduct, and the [Government] obeys the direction,
> the Government will be protected because the action will be deemed in furtherance of
> the policies which led to the promulgation of the regulation.  If the [Government]
> violates the mandatory regulation, there will be no shelter from liability because there is
> no room for choice and the action will be contrary to policy.  On the other hand, if a
> regulation allows the [Government] discretion, the very existence of the regulation
> creates a strong presumption that a discretionary act authorized by the regulation
> involves consideration of the same policies which led to the promulgation of the
> regulations.[47]

---

*O'Bryan v. Holy See*, 556 F.3d 361, 383–84 (6th Cir. 2009) ("[N]ot only does the language of the FSIA
discretionary function exception replicate that of the [FTCA], 28 U.S.C. § 2680(a), but the legislative
history of the FSIA, in explaining section 1605(a)(5)(A), directs us to the FTCA." (internal quotation
marks omitted; second alteration in original)).  We therefore draw upon the case law derived from both
statutes in analyzing the Mission's entitlement to the discretionary function exception.

[44] *Swarna*, 622 F.3d at 146 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*
("*Varig*"), 467 U.S. 797, 814 (1984) (addressing the discretionary function rule of the FTCA)).

[45] 28 U.S.C. § 1605(a)(5)(A).

[46] *Coulthurst*, 214 F.3d at 109.

[47] 499 U.S. 315, 322, 324 (1991) (citation omitted).

13

We have already held that the Mission's compliance with its duty to ensure the protection of the party wall was specifically compelled by regulation and was nondelegable. Our holding above controls our analysis of the discretionary function exception as well. The Mission's alleged failure to ensure the integrity of the wall constituted a "violat[ion of] the mandatory regulation,"[48] and the Mission can therefore find "no shelter from liability"[49] within the discretionary tort exception to the FSIA.

  b. *The Fact that the Construction Implemented a Discretionary Decision does not Confer Immunity upon the Mission*

The Mission argues that the construction, including the failure to shore up the wall, was an activity undertaken to implement its discretionary policy decision to locate its chancery at the Building. In other words, the Mission argues that it is immunized from suit by the FSIA because the accident occurred in the course of construction that implemented this policy decision.

It is true, of course, that the discretionary function exception generally "protect[s] not only the initiation of discretionary activities but also the decisions made about how to implement those activities."[50] Nevertheless, "[t]he fact that certain implementing actions may be insulated from FSIA liability[ ] does not . . . mean that *any* action implementing or executing a discretionary policy will be shielded from liability"[51] Rather, "implementing acts must themselves involve the exercise of policy judgment."[52]

---

[48] *Id.* at 324.

[49] *Id.*

[50] *Red Lake Band of Chippewa Indians v. United States*, 800 F.2d 1187, 1195 (D.C. Cir. 1986); *see MacArthur Citizens Ass'n v. Republic of Peru*, 809 F.2d 918, 921 (D.C. Cir. 1987) ("The Supreme Court has expressly recognized . . . that implementing decisions should be shielded from liability." (citing *Varig*, 467 U.S. at 820)).

[51] *MacArthur Citizens Ass'n*, 809 F.2d at 923 (emphasis in original).

[52] *Id.*

14

Although "[i]n some instances," the determination of whether an act or omission involved the exercise of policy judgment "may be . . . fraught with difficulty,"[53] it is clear to us that the failure to protect a wall during a construction project is not a matter of "policy analysis."[54] The alleged failure of the Mission to ensure the structural integrity of the common wall during construction is simply not a "judgment . . . of the kind that the discretionary function exception was designed to shield."[55]

In sum, we reject the Mission's argument that the immunity accorded to its decision to base its operations in a townhouse located at 135 E. 36th Street and to renovate the Building for such use extends to the tort allegedly committed during its implementation of that decision. Although the Mission was not under an obligation to construct the chancery at any particular location (or, for that matter, to construct a chancery at all), once it decided to do so it could not disregard the nondelegable duty of care imposed upon it by the New York City Building Code.[56] Accordingly, we hold that the obligation to protect the party wall was not discretionary, and that the Mission cannot avail itself of the protection of the FSIA's discretionary function exception.

---

[53] *Id.*

[54] *Cf., e.g.*, *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955) (although initial decision to undertake a lighthouse service was discretionary, the failure to adequately maintain the lighthouse in good condition did not involve any exercise of policy judgment); *see also Maalouf v. Swiss Confed.*, 208 F. Supp. 2d 31, 37 (D.D.C. 2002) (though "establishing a chancery . . . to conduct foreign relations is a discretionary public policy decision," the same cannot be said of "the attachment of a retaining wire to a tree on Embassy property," a decision that does not implicate "broader considerations of budgetary constraints, security concerns, and political concerns regarding the image the foreign government wishes to protect").

[55] *Gaubert*, 499 U.S. at 322–23 (internal quotation mark omitted).

15

## CONCLUSION

To summarize, we hold:

(1)      The Mission owed a nondelegable duty to USAA Casualty's subrogor, Roger Adelman, pursuant to Section 3309.8 of the New York City Building Code, to ensure the structural integrity of the common party wall during the course of construction at the future site of the chancery.

(2)      Because the Mission allegedly breached its nondelegable duty, it may not invoke the shield of sovereign immunity in the Foreign Sovereign Immunities Act to avoid a lawsuit seeking to hold it liable for damage to Adelman's property.

(3)      The Mission may not avail itself of the discretionary function exception to the tortious activity exception to the FSIA—the "exception to the exception"—in order to avoid tort liability, because its failure to ensure the structural integrity of the party wall was not discretionary.

Accordingly, the November 17, 2010 order of the District Court is **AFFIRMED**.

---

[56] *See Maalouf*, 208 F. Supp. 2d at 37.