Navigation Law §§ 88, 88(3), 89-a, 89-a(3), 89-b, 89-b(3); 28 U.S.C § 1602 *et seq*; 46 U.S.C. §§ 8501(a), 8502(a), 8503(a), 8503(b)

A foreign public vessel not engaged in commerce is subject to New York's compulsory pilotage.

September 28, 2016

Frank W. Keane                                            Formal Opinion
Executive Director & Secretary                           No. 2016-F2
Board of Commissioners of Pilots
17 Battery Place
New York, New York 10004

Dear Mr. Keane:

You have requested an opinion regarding whether certain ships from foreign countries must use a New York-licensed pilot to navigate when entering or departing New York waters. New York law provides that "[e]very foreign vessel and every American vessel under register" entering or departing from New York ports must take a New York-licensed pilot. Navigation Law §§ 88, 89-a, 89-b. Your question specifically is whether foreign public vessels not engaged in commerce—for example, foreign naval vessels attending Fleet Week—are subject to New York's pilotage requirement. Although not free from doubt, we are of the opinion that a foreign naval vessel, not engaged in commerce, is subject to New York's compulsory pilotage.

To begin, the New York State Navigation Law plainly states that "[e]very foreign vessel" is required to have a New York-licensed pilot when entering or departing a New York port. The law does not contain any exemptions. But this is not the end of the analysis: interests of the federal government that subordinate New York's authority may be implicated because of the public status of the foreign vessel.[1]

Congress has provided since 1789 that "pilots in the bays, rivers, harbors, and ports of the United States shall be regulated only in conformity with the laws of the

_____

[1] Under international law, a foreign public vessel would be subject to a receiving nation's pilotage requirement. *See* Restatement (Third) of Foreign Relations Law of the U.S. § 512 Reporters' Note 6 (1987) ("A warship in a foreign port must comply with the laws and regulations of the coastal state relating to navigation and safety" (internal citation omitted)); *see also* John T. Oliver, *Legal & Policy Factors Governing the Imposition of Conditions on Access to and Jurisdiction over Foreign-Flag Vessels in U.S. Ports*, 5 S.C. J. Int'l L. & Bus. 209, 216-17 (2009). Thus the question here is whether, in the absence of a federal requirement for a local pilot, New York's requirement applies to a foreign public vessel.

States," except as Congress otherwise provides. 46 U.S.C. § 8501(a). Congress has expressly regulated pilotage in certain circumstances. In particular, an American merchant vessel authorized to engage in *domestic* commerce between American ports (a "coastwise seagoing vessel") must be piloted by a federally-licensed pilot if it is not sailing under authority to engage in *foreign* commerce. 46 U.S.C. § 8502(a); *see also Huus v. New York & Porto Rico Steamship Co.*, 182 U.S. 392, 395 (1901) (under federal law merchant vessels can be licensed for coasting trade or registered for foreign trade). And a vessel engaged in foreign commerce may be required, by the Secretary of Homeland Security, to use a federally-licensed pilot if it is traveling to or from a port in a state that does not itself regulate pilots. 46 U.S.C. § 8503(a). Any such requirement terminates, however, when the state establishes a requirement for a state-licensed pilot and informs the Secretary. 46 U.S.C. § 8503(b).

Because New York regulates pilots, American and foreign vessels engaged in foreign commerce are subject to New York's pilotage requirement. Navigation Law §§ 88, 89-a, 89-b; 46 U.S.C. § 8501(a); *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 136 (2nd Cir. 1994). Failure to accept a compulsory pilot renders the vessel subject to a fine in addition to pilotage fees. Navigation Law §§ 88(3), 89-a(3), 89-b(3); *Interport Pilots*, 14 F.3d at 137.

Congress has not legislated with respect to pilots on foreign public (i.e., noncommercial) vessels. Thus no federal enactment purports to exempt foreign public vessels from New York's compulsory pilotage statute. It might be argued, however, that the federal Constitution itself prevents New York from imposing a piloting requirement on foreign public vessels. The regulation of commercial vessels falls under Congress's power under the Commerce Clause, and Congress decided to divide regulatory jurisdiction over pilotage between the federal government and the states. *Cooley v. Bd. of Wardens*, 53 U.S. 299, 315-16 (1852); *see also Gibbons v. Ogden*, 22 U.S. 1, 189-91 (1824). By contrast, regulation of a foreign public vessel arguably implicates federal powers relating to foreign affairs and international relations, over which the federal government has supreme power, instead of or in addition to Congress's powers under the Commerce Clause. *United States v. Pink*, 315 U.S. 203, 233-34 (1942); *cf. Schooner Exchange v. McFaddon*, 11 U.S. 116, 144 (1812) (differing concerns of sovereign country with respect to its citizens' merchant vessels and its public military ships entering port of foreign country).

State legislation, or its operation in a particular instance, cannot interfere with the federal government's power to conduct foreign affairs. For example, in *Zschernig v. Miller*, the Supreme Court held that a state law that resulted in probate courts inquiring into the administration of foreign law and the credibility of foreign diplomatic statements constituted impermissible state involvement in international relations. 389 U.S. 429 (1968). And in *National Foreign Trade Council v. Natsios*, a

state law that restricted the ability of state agencies to purchase goods or services from companies that did business with Burma was held to encroach on the federal government's power over foreign affairs. 181 F.3d 38, 52-53 (1st Cir. 1999).

But state legislation that only indirectly and insignificantly impacts foreign relations does not impermissibly encroach on the federal power. *Ray v. Atlantic Richfield Co.*, 435 U.S. 151, 180 (1978) (requirement that tugboat escort vessels in Puget Sound that do not comply with state safety standards, having only insignificant international consequences, valid). Moreover, such a law applies to nationals of a foreign country. For example, in *Mukaddam v. Permanent Mission of Saudi Arabia to the United Nations*, in holding that New York's Human Rights Law applied to a foreign diplomatic mission, the court rejected the mission's argument that allowing a claim against the mission would unconstitutionally intrude upon the federal government's supreme power over foreign affairs. 111 F. Supp. 2d 457, 472-73 (S.D.N.Y. 2000). The court recognized that the Human Rights Law "would have to have a more significant and direct effect in foreign countries than it does" to be found prohibitively intrusive in the field of foreign affairs. 11 F. Supp. 2d at 473.

In our view, New York's pilotage law, a statute of general applicability, does not have the significant and direct effect on foreign countries that would render it an impermissible intrusion in foreign affairs. Consequently, we are of the opinion that New York's compulsory pilotage requirement applies not only to commercial vessels but also to foreign public vessels not engaged in commerce.[2]

That said, as a practical matter, enforcement of this requirement may be difficult. If a foreign state owning a naval vessel refuses a New York-licensed pilot, the foreign state likely will be immune from enforcement of the requirement through American courts. *See* Foreign Sovereign Immunity Act (FSIA), 28 U.S.C. § 1602 *et seq.* We do not address the use of diplomatic means to enforce compliance.[3] *See 767 Third Ave. Assocs. v. Permanent Mission of Republic of Zaire*, 988 F.2d 295, 303 (2d Cir. 1993). Nor do we consider whether the foreign state could be sued for any damage caused by its naval ship after refusing a New York-licensed pilot. *See USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103 (2d Cir. 2012) (foreign mission held liable under FSIA's "tortious activity" exception to immunity for failure to comply with mandatory provision of city building code).

---

[2] A treaty between the United States and a foreign country that required a federally-licensed pilot or specifically exempted a foreign nation's public vessels from pilotage requirements would render New York's pilotage requirement null with respect to those vessels. *See Clark v. Allen*, 331 U.S. 503, 517 (1947). We are not aware of any such treaties.

[3] We understand that a foreign public vessel intending to enter United States territory must obtain a diplomatic clearance from the United States Department of State.

3

In summary, while not free from doubt, we are of the opinion that New York's compulsory pilot statute applies to foreign naval vessels not engaged in commerce.


Very truly yours,


ERIC T. SCHNEIDERMAN