22-1645
Harvey v. Permanent Mission of the Republic of Sierra Leone
to the United Nations

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022
No. 22-1645

JANET HARVEY, JOSEPH HARVEY,
*Plaintiffs-Appellees,*

*v.*

PERMANENT MISSION OF THE REPUBLIC OF SIERRA LEONE TO THE
UNITED NATIONS,
*Defendant-Cross Defendant-Appellant,*

JULES DAVIS, FAIRFIELD CONSTRUCTION ASSOCIATES, LLC, EMPIRE
GROUP NYC, LLC, DAVID I. MONTESI,
*Defendants-Cross Claimants-Cross Defendants.*

On Appeal from the United States District Court for the Southern
District of New York

ARGUED: JUNE 1, 2023
DECIDED: MARCH 25, 2024

Before: NARDINI, PÉREZ, and KAHN, *Circuit Judges.*

Plaintiffs-Appellees Janet and Joseph Harvey brought several common law tort claims against Defendant-Cross Defendant-Appellant the Permanent Mission of the Republic of Sierra Leone to the United Nations, alleging they were harmed by faulty renovations at the Mission's headquarters, which is located next door to the Harveys' home in Manhattan. The Mission moved to dismiss the Harveys' complaint, arguing that the district court lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* The United States District Court for the Southern District of New York (Edgardo Ramos, *District Judge*) denied the Mission's motion to dismiss for lack of subject matter jurisdiction, holding that two exceptions to the Mission's immunity applied: the commercial activity exception, *id.* § 1605(a)(2), and the tortious activity exception, *id.* § 1605(a)(5). The Mission filed this interlocutory appeal. We hold that the commercial activity exception applies because the Harveys' claims are based upon the Mission's allegedly faulty contractual renovations, and renovating a building is something that a private party can, and often does, do. Accordingly, we AFFIRM.

---

ANA JARA (Rachel Maimin, *on the brief*), Lowenstein Sandler LLP, New York, NY, *for Plaintiffs-Appellees*.

NICHOLAS M. RENZLER (Andrew B. Loewenstein and Christina G. Hioureas, *on the brief*), Foley Hoag LLP, Boston, MA and New York, NY, *for Defendant-Cross Defendant-Appellant*.

---

WILLIAM J. NARDINI, *Circuit Judge*:

Plaintiffs-Appellees Janet and Joseph Harvey brought several common law tort claims against Defendant-Cross Defendant-Appellant the Permanent Mission of the Republic of Sierra Leone to the United Nations, Empire Group NYC, LLC ("Empire"), David I. Montesi, Fairfield Construction Associates, LLC ("Fairfield"), and Jules Davis (collectively, "Defendants"), [1] alleging that faulty renovations at the Mission's headquarters, which is located next door to the Harveys' home in Manhattan, "significantly harmed" them. J. App'x at 101, ¶ 1. The Mission moved to dismiss the Harveys' complaint, arguing, among other things, that the district court lacked subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* The parties do not dispute that the Mission is an embodiment of the foreign state of Sierra Leone and is therefore entitled to sovereign immunity under the FSIA unless an

---

[1] Empire, Montesi, Fairfield, and Davis are more fully described as Defendants-Cross Claimants-Cross Defendants.

exception to that immunity applies. By order dated July 1, 2022, the United States District Court for the Southern District of New York (Edgardo Ramos, *District Judge*) denied the Mission's motion to dismiss for lack of subject matter jurisdiction, holding that two exceptions to the Mission's immunity applied: the commercial activity exception, *id.* § 1605(a)(2), and the tortious activity exception, *id.* § 1605(a)(5). *See Harvey v. Permanent Mission of the Republic of Sierra Leone to the United Nations*, No. 21-cv-4368 (ER), 2022 WL 2392101, at *3–4, 6-9 (S.D.N.Y. July 1, 2022).

The Mission filed this interlocutory appeal, arguing that neither exception should apply to abrogate its immunity. We hold that the Harveys' claims fall within the commercial activity exception, and therefore AFFIRM the order of the district court to the extent it denied the Mission's motion to dismiss for lack of subject matter jurisdiction.

4

## I. Background

### A. Factual Background

The following facts are drawn from the allegations in the Harveys' amended complaint (the "Amended Complaint"), which we must accept as true for purposes of evaluating the Mission's motion to dismiss. *Kolbasyuk v. Cap. Mgmt. Servs., LP*, 918 F.3d 236, 238 n.1 (2d Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Harveys live in a townhouse located at 243 East 49th Street, New York, NY. The Mission's headquarters is a townhouse located directly next door, at 245 East 49th Street, and the two townhouses share a party wall. Since 2019, and "with no end in sight," the Mission has been renovating its headquarters to "among other things . . . build two additional floors." J. App'x at 106, ¶ 23. The Mission hired a general contractor, which in turn hired a subcontractor, to build out the construction. Fairfield is the "general contractor for the renovations." *Id.* at 105, ¶ 14. Davis (together with Fairfield, the "General Contractor Defendants") "leads Fairfield's work" at the

Mission's headquarters. *Id.* at 107, ¶ 25. The General Contractor

Defendants "have held themselves out as agents acting on behalf of

the Mission." *Id.* Empire is Fairfield's subcontractor who has

"performed substantially all of the renovations" at the Mission's

headquarters during the relevant time. *Id.* at 104, ¶ 13. Montesi

(together with Empire, the "Subcontractor Defendants") "leads

Empire's work" at the Mission's headquarters and obtained "most of

the active" construction permits from the New York City Department

of Buildings ("DOB") on behalf of Empire. *Id.* at 104–05, ¶ 13.

The incomplete renovations at the Mission's headquarters have

created a number of dangerous conditions in the Harveys' home.

Among other things, the Harveys allege that (1) the renovations have

resulted in the presence of heavy debris, some of which is flammable,

throughout the Mission's headquarters; (2) Defendants have failed to

extend the Harveys' chimney above the two new floors that the

Mission is adding to its headquarters, "creating the potential for the

6

backdraft of products of combustion," such as "lethal carbon monoxide," into the Harveys' home, *id.* at 109, ¶ 29; (3) Defendants, without permission, placed heavy equipment and scaffolding on the Harveys' roof, and have failed to properly secure that heavy equipment and scaffolding; (4) the renovations have left unfilled gaps in the party wall that the Harveys' home shares with the Mission's headquarters, threatening the "structural integrity" of the Harveys' home, *id.* at 112, ¶ 40; and (5) Defendants have failed to adequately waterproof various parts of the Mission's headquarters, including the roof and party wall, resulting in mold throughout the Mission's headquarters, which "threatens to compound the mold problem" in the Harveys' home, *id.* at 113, ¶ 49.

The Harveys sought help from the DOB, but despite the DOB's many efforts to "cure the dangers posed by the renovations," the issues remain. *Id.* at 115, ¶ 55. Since 2019, the DOB has received twenty-one complaints concerning the renovations at the Mission's

7

headquarters, two of which resulted in a partial stop work order and one of which resulted in a full stop work order. The second partial stop work order, from April 2021, remains pending, requiring Defendants to secure the Harveys' roof. Although the DOB conducted two follow-up inspections to ensure compliance with the partial stop work order, "no steps" were taken by Defendants to secure the Harveys' roof, resulting in a fine of at least $2,500. *Id.* at 103, ¶ 8. There are also "seven open Environmental Control Board violations" related to the renovations, two of which have resulted in fines for $25,000 each. *Id.* at 115, ¶ 55. Moreover, the DOB has fined Montesi at least $61,865 for New York City Construction Code violations at the Mission's headquarters. None of the fines have been paid.

## B. Procedural Background

On May 14, 2021, the Harveys sued the Subcontractor Defendants and the Mission, asserting claims for negligence, private

8

nuisance, trespass, and *res ipsa loquitur*. On June 7, 2021, the district court entered a consent order (the "Consent Order") "directing the [Subcontractor Defendants] to work with the Harveys to remedy certain of the alleged deficiencies with the renovation," including requiring the Subcontractor Defendants "to create and apply for approval for plans for a temporary chimney extension to be installed on the Harveys' home, to remove certain debris inside the Mission property, to ensure entry and egress from the street, and to enclose elevator shaft openings." *Harvey*, 2022 WL 2392101, at *2 (footnote omitted).

On October 22, 2021, the Harveys filed the Amended Complaint, which is the operative complaint in this case. The Amended Complaint added the General Contractor Defendants as defendants and, mirroring the original complaint, asserted claims for negligence, private nuisance, trespass, and *res ipsa loquitur* against all defendants. The Amended Complaint demanded monetary damages

9

"in an amount in excess of $155,020.00, together with pre-judgment and post-judgment interest, attorneys' fees," punitive damages against the General Contractor and Subcontractor Defendants "for their egregious disregard of the Harveys' safety, wellbeing, and ability to live in their own home," and injunctive relief against all Defendants. J. App'x at 129.

On December 14, 2021, the Mission moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6), for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim, respectively. That same day, the Harveys moved for contempt and sanctions against the Subcontractor Defendants for alleged violations of the Consent Order, and a preliminary injunction against all Defendants.

On July 1, 2022, the district court entered an omnibus opinion and order resolving these motions. *See generally Harvey*, 2022 WL 2392101. Regarding subject matter jurisdiction, the district court held

that the commercial activity and tortious activity exceptions, but not the immoveable property exception, applied to strip the Mission of its immunity under the FSIA. *See id.* at *3–9. Regarding personal jurisdiction, the district court held that the "FSIA also confers personal jurisdiction." *Id*. at *3 (citing 28 U.S.C. § 1330(a), (b)). And, regarding the Mission's motion to dismiss for failure to state a claim, the district court held that the Harveys had "stated a claim as to negligence and nuisance, but not trespass," and therefore dismissed the Harveys' trespass claim.[2] *Id.* at *9 (footnotes omitted).

The district court denied the Harveys' motion for contempt and sanctions, declining to hold the Subcontractor Defendants in contempt for failing to comply with the Consent Order. *See id*. at *12. The district court found that the Harveys had not presented "clear

---

[2] The district court did not address the Harveys' *res ipsa loquitur* claim, and the parties do not address that claim in their briefs before this Court. We assume this is because "the doctrine of *res ipsa loquitur* does not constitute a separate cause of action." *USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 105 n.6 (2d Cir. 2012) (citing *Frew v. Hosp. of Albert Einstein Coll. of Med. Div. of Montefiore Hosp. & Med. Ctr.*, 428 N.Y.S.2d 300, 301 (2d Dep't 1980)).

11

and convincing evidence" of noncompliance with respect to the portions of the Consent Order requiring debris removal, ensuring proper entry and egress, and enclosing openings in the elevator shaft, and although the Harveys did present clear and convincing evidence of noncompliance regarding the chimney extension plans, the district court found "that the Harveys [had] assumed responsibility" for that part of the Consent Order. *Id.* at *10–12. The district court also declined to impose sanctions on the Subcontractor Defendants but "admonished [them] that any future failure to timely comply with court orders could" result in sanctions. *Id.* at *12. Finally, the district court denied the Harveys' motion for a preliminary injunction on the basis that the Harveys had not demonstrated irreparable harm. *Id.* at *13–14.

## II. Discussion

On appeal, the Mission challenges the district court's holding that it was stripped of its sovereign immunity under the FSIA based on the commercial activity exception and the tortious activity

exception. The Mission argues that the commercial activity exception does not apply because the Harveys' suit is based on the sovereign activity of running a mission to the United Nations, and in the alternative, any commercial activity that might have occurred through the renovations was carried out by the General Contractor and Subcontractor Defendants and cannot be imputed to the Mission. Further, the Mission argues that the tortious activity exception does not apply because the Harveys did not plead all the elements of any alleged tort by the Mission. For the reasons below, we conclude that the commercial activity exception applies.

## A. Standard of Review

This Court has jurisdiction to hear this appeal because the district court's order denying immunity under the FSIA is immediately appealable under the collateral order doctrine. *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012). "[W]e review *de novo* the district court's conclusions of law regarding jurisdiction

13

under the FSIA." *City of New York v. Permanent Mission of India to the United Nations*, 446 F.3d 365, 368 (2d Cir. 2006).

**B. The FSIA**

"[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Under the FSIA, "a foreign state is presumptively immune from the jurisdiction of United States courts" and "unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). In relevant part, there are exceptions for commercial activity and tortious activity that occurs in the United States. *See* 28 U.S.C. §§ 1605(a)(2), (5).[3] "A foreign state's permanent mission to the United Nations is indisputably the 'embodiment' of that state." *USAA Cas.*

---

[3] Though not at issue in this case, there are also exceptions for waiver; expropriation; succession; arbitration; maritime liens; terrorism; and counterclaims. *See* 28 U.S.C. §§ 1605(a)(1), (3), (4), (6), 1605(b), 1605A, 1607.

14

*Ins. Co. v. Permanent Mission of Republic of Namibia*, 681 F.3d 103, 107 (2d Cir. 2012).  Therefore, as the parties agree, the Mission is entitled to immunity unless an exception to the FSIA applies.

### 1. Commercial Activity Exception

In relevant part, the commercial activity exception provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state."  28 U.S.C. § 1605(a)(2).

### 2. Tortious Activity Exception

The tortious activity exception provides that a foreign state is not immune from suit in any case "not otherwise encompassed [by the commercial activity exception], in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state . . . ."  28 U.S.C.

15

§ 1605(a)(5). That the tortious activity exception can apply only to cases "not otherwise encompassed" by the commercial activity exception suggests that the commercial activity exception and the tortious activity exception are "mutually exclusive." *De Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984). In other words, activity that is found to be commercial cannot also be found to be tortious, and vice versa. *See id.* ("If [a court in another Circuit] lifted jurisdictional immunity based on its finding that the activities complained of were tortious, not commercial, it is inconsistent for this court to lift execution immunity based on a finding that the activities were commercial."); *accord Republic of Namibia*, 681 F.3d at 107–08 (declining to address the commercial activity or the immovable property exception because it determined that the tortious activity exception applied); *Joseph v. Off. of Consulate General of Nigeria*, 830 F.2d 1018, 1025 (9th Cir. 1987) (same).

16

**C. Application**

We hold that the district court correctly concluded that the Mission's conduct underlying the Harveys' suit qualifies as "commercial activity." Because the commercial activity exception applies, we decline to address the applicability of the tortious activity exception.

To invoke the commercial activity exception, the Harveys "must establish that (1) [the Mission] engaged in 'a commercial activity,' (2) 'the [legal] action is based upon' that activity, and (3) that activity 'cause[d] a direct effect in the United States.'" *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 134 (2d Cir. 2022) (quoting 28 U.S.C. § 1605(a)(2)). The third prong of this test is undisputed in this case, which exclusively involves a construction project in Manhattan. Therefore, our inquiry revolves around the first two prongs, prompting the following questions: (1) what specific conduct by the Mission serves as the basis of the Harveys' lawsuit, and (2) whether that conduct is commercial activity.

17

### 1. The Gravamen of the Harveys' Suit

Beginning with the first question, under § 1605(a)(2), "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015) (quoting *Nelson*, 507 U.S. at 356–57). Identifying the gravamen requires "zero[ing] in on the core of [the plaintiffs'] suit" to determine the "acts that actually injured them." *Id*. This is the "threshold step" for determining whether the commercial activity exception applies. *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 56 (2d Cir. 2016) (quoting *Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006)).

The Mission attempts to construe the gravamen of the Harveys' suit as being based on the sovereign activity of "running the Mission." Appellant's Br. at 31 (emphasis omitted) (quoting J. App'x at 105, ¶ 18 ("[A] foreign state is not immune in a case as this one where the action is based on a 'commercial activity carried on in the United States by

the foreign state' namely, as here, running the Mission" (quoting 28 U.S.C. § 1605(a)(2)))). Although the Amended Complaint purportedly identifies "running the Mission" as the activity upon which the action is based, J. App'x at 105, ¶ 18, such a construction of the Harveys' suit is, in the words of the district court, "too restrictive," *Harvey*, 2022 WL 2392101, at *4. We are bound to evaluate the substance of the challenged conduct, not the labels any party might place on that conduct. *See Criales v. Am. Airlines, Inc.*, 105 F.3d 93, 97 (2d Cir. 1997) ("[W]e [do] not permit the choice of labels to distort substance, especially where the consequences would be so drastic as to deprive a party of the opportunity to be heard."). Broadly, the Amended Complaint identifies three categories of conduct stemming directly from the renovation activity, relating to: (1) the shared party wall, (2) the Harveys' roof, and (3) the Harveys' chimney. As the Amended Complaint describes in detail, it is this commercial construction work that has allegedly injured the Harveys and which

therefore forms the basis for the Harveys' claims. *See Sachs*, 577 U.S. at 33 (explaining that a court should identify the "particular conduct" on which an action is based "by looking to the 'basis' or 'foundation' for a claim" (quoting *Nelson*, 507 U.S. at 357)).

As such, the Mission's reliance on *MacArthur Area Citizens Ass'n v. Republic of Peru*, 809 F.2d 918 (D.C. Cir. 1987), is misplaced. In that case, a neighborhood association sued Peru after Peru purchased a property in an area zoned for residential occupancy and converted that property into a chancery for its Naval Attaché. *Id.* at 919. Although the association complained, in part, about alterations Peru made to the property that stripped it of its residential qualities, the association also complained about "congestion from an increased number of chancery cars vying for [parking spaces]." *Id.* (internal quotation marks omitted). The sum of the complaint was that Peru "was causing denigration and depreciation of the value of its members' residences nearby." *Id.* Recognizing that the central issue

20

in the complaint was the existence of the chancery in a residential neighborhood, the D.C. Circuit held that "operation of a chancery is, by its *nature* governmental, not commercial," and therefore the commercial activity exception did not apply. *Id.* at 920 (citation omitted). Here, in contrast, the Harveys do not take issue with the mere fact that the Mission is their neighbor or that the Mission conducts sovereign business from their headquarters; instead, they "take issue with the Mission's contractual renovations that are damaging [their] home." Appellees' Br. at 36; *see also* J. App'x at 101, ¶ 1 ("This action arises from the Defendants' unlawful and incompetent efforts to renovate and expand the Mission's headquarters."). Therefore, *MacArthur*'s analysis has no bearing on the case at hand.

In sum, we find the gravamen of the Harveys' suit to be the Mission's allegedly faulty construction work at its headquarters, which it has hired a general contractor to perform.

**2. Whether the Gravamen of the Harveys' Suit Is "Commercial Activity"**

The next question is whether the Mission's conduct related to its renovation efforts qualifies as "commercial activity." The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The statute further states that "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose."[4] *Id.* "'[P]urpose' is 'the reason why the foreign state engages in the activity' and 'nature' is 'the outward form of the conduct that the foreign state performs or agrees to perform.'" *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 561 (2d Cir. 2020) (emphasis omitted) (quoting *Nelson*, 507 U.S. at 361).

---

[4] As the Supreme Court has noted, this definition "leaves the critical term 'commercial' largely undefined." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612 (1992).

22

"[I]n applying the nature-versus-purpose analysis, 'the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Id.* (quoting *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992)). Put simply, "a foreign state engages in commercial activity 'where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns.'" *Id.* (quoting *Nelson*, 507 U.S. at 360 (internal quotation marks omitted)).

All of the conduct related to the Mission's renovation efforts are commercial acts because having a contractor renovate a building is something that a private party can—and often does—do. *See, e.g.*, H.R. Rep. No. 94-1487, at 16 (1976) (in the legislative history of the

23

FSIA, explaining that "a contract by a foreign government . . . to construct a government building" or "a contract to make repairs on an embassy building" "constitutes a commercial activity"). Regardless of the reason the Mission decided to renovate its headquarters, by engaging a contractor to carry out construction work, the Mission was acting "'in the manner of a private player within' the market." *Nelson*, 507 U.S. at 360 (quoting *Weltover*, 504 U.S. at 614).

The Mission argues that even if renovating a building is commercial activity, the Mission itself did not engage in that activity, but rather it, at most, entered into a contract for the renovations that the General Contractor and Subcontractor Defendants performed. The Mission claims that the commercial activity exception is thus inapplicable because the conduct of the contractors cannot be imputed to the Mission.

24

But this is a question of substantive liability stemming from the Mission's contractual renovations, not one of construing the FSIA. The overall activity at issue—the construction work—is being conducted as a result of a routine commercial transaction between the Mission and a general contractor. Whether the Mission could successfully resist liability on the ground that any fault lies solely with the contractor is a merits question, not one that goes to the applicability of the commercial activity exception. Nevertheless, because we recognize that the Mission may renew its imputation argument in the district court, in the interest of judicial efficiency we explain why it fails.

Upon beginning the renovations, the Mission acquired certain nondelegable duties, and consequently, it is responsible for the conduct resulting from the renovations. "The New York Court of Appeals has repeatedly held that statutes and regulations that address specific types of safety hazards create nondelegable duties of

care." *Republic of Namibia*, 681 F.3d at 110. Under New York law, "a regulation will generally create a nondelegable duty where it contains a 'specific positive command,' but not where it merely incorporates 'the ordinary tort duty of care,' using terms like 'adequate,' 'effective,' or 'suitable.'" *Id.* at 110–11 (quoting *Morris v. Pavarini Constr.*, 9 N.Y.3d 47, 50 (2007)). The New York City Construction Codes, which include the Building Code and Mechanical Code, impose nondelegable duties relating to the aspects of the renovations identified in the Amended Complaint—the shared party wall, the Harveys' roof, and the Harveys' chimney.

Specifically, Building Code § 3309.8 provides that "[w]hen any construction or demolition operation exposes or breaches an adjoining wall, including . . . party walls . . . , the person causing the construction" must, among other things, "[m]aintain the structural integrity of such walls and adjoining structure." *Accord Republic of Namibia*, 681 F.3d at 111 (stating, in the context of holding that the

26

tortious activity exception applied, that Building Code § 3309.8 levies a nondelegable duty because it "imposes upon the 'person causing' the construction the duty to, under specific circumstances, perform a specific task" (quoting Building Code § 3309.8)). Similarly, Building Code § 3309.10 imposes upon the "person causing" the construction the duty to, among other things, protect the roof of an adjoining building. And Mechanical Code §§ 801.1.1.1–801.1.1.3 impose upon "the owner" of a building that has increased in height the duty to, among other things, alter the chimney of a neighboring, shorter building and obtain consent from the owner of the shorter building to do the necessary work. Based on these nondelegable duties, the Mission is responsible for the "commercial activity"—the conduct related to its renovation efforts—upon which the Harveys' suit is based.

## III.    Conclusion

In sum, we hold as follows:

27

1. The gravamen of the Harveys' suit is based upon the allegedly faulty contractual renovations at the Mission's headquarters;

2. All of the complained-of conduct related to the Mission's contractual renovation efforts involve commercial activity because the Mission is exercising only those powers that can also be exercised by private citizens (i.e., hiring a contractor to renovate a building, which is something that a private party can—and often does—do); and

3. The Mission is responsible for the conduct related to its renovation efforts based on the nondelegable duties it acquired upon beginning the renovations.

Therefore, the commercial activity exception applies in this case, abrogating the Mission's immunity under the FSIA. Accordingly, we AFFIRM the district court's order to the extent it denied the Mission's motion to dismiss for lack of subject matter jurisdiction.